# Richmond

LLOYD E. SLAYTON, ET ALS. V. COMMONWEALTH OF VIRGINIA.

June 10, 1946.

Record No. 3109.

Present, All the Justices.

The opinion states the case.

*Williams, Miles & Williams* and *Stowers & Stowers*, for the plaintiffs in error.

*Abram P. Staples, Attorney General*, and *V. P. Randolph, Jr., Assistant Attorney General*, for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

The factual background of this case is the same as that of the companion case of *Slayton* v. *Commonwealth of Virginia*, this day decided, *ante*, page 357, 38 S. E. (2d) 479, and need not be again stated. It will be recalled, from the facts there related, that on November 23, 1945, Lloyd E. Slayton, Lee R. Carter, Lee McDaniel, and Junior Lanier, who by common consent were tried together, were convicted by a jury of perjury for having sworn falsely in a proceeding before the trial justice of Campbell county. The proceedings in this perjury trial are now before us on a writ of error awarded to the joint judgment entered upon the several verdicts of conviction.

The Commonwealth proved that on July 6, 1945, in a proceeding before the trial justice in which Slayton was on trial

for driving his car on June 23, after his permit had been suspended, the several plaintiffs in error here, Slayton, Carter, McDaniel, and Lanier, after each had been duly sworn, solemnly testified that at the time in question the car was not being driven by Slayton, but was being driven by Carter.

The Commonwealth submitted clear and convincing proof that this testimony was false. J. H. Barnes, the State police officer who made the arrest, testified that Slayton was actually driving the car. Shirley Hedrick, an occupant of the Slayton car at the time, likewise testified that Slayton, and not Carter, was driving. The incident occurred in broad daylight and the parties were well known to each other.

It was further shown that Lanier signed a written confession that his testimony was false, that he was not a witness to the incident, and knew nothing whatsoever about it. He made a verbal confession to the same effect to the Commonwealth's attorney of Campbell county. While Lanier later repudiated the written confession, claiming that it was given under fear and duress, he in no manner retracted the confession which he had made to the Commonwealth's attorney.

It will thus be seen that there was ample evidence before the jury to warrant the verdict of conviction as to each accused. Indeed, the sufficiency of the evidence is not here challenged.

The plaintiffs in error make only two contentions before us:

(1) The trial court should have granted their petitions for a change of venue; and

(2) The acquittal of Slayton of the charge that he was driving the car at the time in question "barred and estopped" the Commonwealth from prosecuting him and the other plaintiffs in error on the charge that their testimony, given at the trial, was false.

Each of the defendants filed a separate petition, sworn to, which alleged, in substance, that the circuit court, in affirming the trial justice's action in revoking the suspended sentence to which Slayton was subject, announced "in open

court," "in the presence of sundry citizens of Campbell county," that notwithstanding Slayton's acquittal by the jury of the charge of driving the car at the time in question, it was of opinion, upon the evidence adduced, that he was actually driving, and that he (Slayton) was guilty of perjury in testifying to the contrary; that a finding of the circuit court to the same effect was embodied in its formal orders affirming the revocation of the suspended sentence and refusing to reopen the same;[1] that the expression by the court of the opinion that Slayton was guilty of perjury was tantamount to an expression of opinion that each of the other defendants was likewise guilty of perjury; and that "because of the foregoing facts a strong and adverse sentiment and opinion *was* created and *is* existing in the minds of those who heard said statements or saw said orders, or to whom the same may have been communicated, and (that) this, coupled with the fact that the court, as aforesaid, is convinced of the guilt of this petitioner on the charge of perjury for which he is to be tried and which is now pending before the court, and has so expressed himself, the petitioner respectfully submits that he verily believes it is impossible for him, under these adverse circumstances, to obtain in this venue and forum a fair and impartial trial of his cause, * * * ."

While the formal orders entered by the circuit court in disposing of the revocation of the suspended sentence are attached to the petitions, no affidavits were filed or evidence adduced in support of the other allegations.

It will be observed that the petitions ask for a change of venue on two grounds: First, the disqualification of the

---

[1] The order affirming the trial justice's revocation of the suspended sentence contains this language:

"Having heard all the evidence with respect thereto the court is of the opinion that the said Slayton has violated the law by driving while his permit was suspended . and has *committed perjury* notwithstanding the verdict of the jury to the contrary, * * * ." (Italics added.)

The orders entered in declining to reopen the matter are of similar import with the added statement that a consideration of the evidence adducd at the later trials, arising out of the same matter, had confirmed the court in its view that Slayton was guilty of perjury in testifying that he was not driving the car.

judge himself because of his "firm and expressed opinion" of the guilt of each defendant "of the perjury charge which is now pending" against him; and second, the creation in the community by the remarks and attitude of the judge of "a strong and adverse sentiment which makes it, as the petitioner verily believes," impossible for him to obtain "a fair and impartial trial of his cause" in this venue.

While the claim of the disqualification of the judge does not seem to have been seriously pressed in the trial court, and is not mentioned in the brief of the plaintiffs in error, the matter is of sufficient importance to merit our attention.

 It is well settled that a judge is not disqualified to sit in a criminal case because in the disposition of a matter arising out of the same facts he has formed or expressed an opinion as to the guilt of the accused. 30 Am. Jur., Judges, sec. 76, p. 786; 22 C. J. S., Criminal Law, sec. 195, p. 307; 45 L. R. A. (N. S.) 511, note; 42 Am. St. R. 197, note.

Frequently, in the disposition of cases, both civil and criminal, a judge is called upon to form and express an opinion upon a matter or issue which may come before him in a subsequent proceeding arising out of the same state of facts. The courts are practically unanimous in the view that neither the forming nor the expression of such a conclusion, under such circumstances, disqualifies a judge in the subsequent matter, particularly where the issue of fact in the latter proceeding is to be determined by a jury. 30 Am. Jur., Judges, sec. 76, p. 786; 22 C. J. S., Criminal Law, sec. 195, p. 307, and cases there cited; *Heflin* v. *State*, 88 Ga. 151, 14 S. E. 112, 30 Am. St. Rep. 147; *State* v. *Baldwin*, 178 N. C. 687, 100 S. E. 348, 10 A. L. R. 1112; *Kreling* v. *Superior Court of Los Angeles County*, 25 Cal. (2d) 305, 153 P. (2d) 734; *State* v. *Tawney*, 81 Kan. 162, 105 P. 218, 219, 135 Am. St. Rep. 355; *State* v. *Williams*, 197 Iowa 813, 197 N. W. 991, 993; *Craven* v. *United States*, C. C. A. 1, 22 F. (2d) 605, 607, 608.

*Heflin* v. *State, supra,* a leading case, is strikingly similar to that before us. Heflin was indicted for perjury, alleged to have been committed upon the trial of a criminal case in

which he was a witness. When the perjury charge came on to be heard, Heflin moved for a disqualification of the judge on the ground that in his disposition of the preceding case the judge had expressed the view that he (Heflin) had committed perjury. This motion was overruled and Heflin was convicted. In disposing of the contention that the judge was disqualified to sit in the perjury case, the court said (14 S. E., at page 116):

" * * * There is certainly no law which renders it a disqualification *per se* to try an indictment for perjury, that the judge is the same who presided at the trial in which the alleged perjury was committed, and also at the trial of another witness who testified in the first case. It can make no difference that the judge had thus become convinced of Heflin's guilt because the opinion of the presiding judge as to the guilt or innocence of the prisoner, however that opinion may have been formed, does not unfit him for discharging his judicial duties with the most complete fairness and impartiality. These duties are exactly the same, whether the accused is guilty or innocent, and upon that question the judge has no deciding power, and is not permitted to intimate to the jury his opinion. That all his functions may be duly exercised, irrespective of his own opinions, is taken by the law for true. * * * It could hardly be expected that from hearing all the evidence he would not form some opinion of his own as to the actual guilt or innocence of the person on trial; but the law cares not for this, and is not so absurd as to make it work a disqualification to preside throughout the trial. * * * "

In *State* v. *Baldwin*, *supra*, it was held that a remark of the judge, in passing sentence upon one person convicted of crime, implying the guilt of the accused and another person subsequently tried for a similar offense, growing out of the same state of facts, was not a ground for a new trial of the latter person in the absence of proof that the remark of the judge had been heard by or communicated to the jury.

In *State* v. *Tawney*, *supra*, it was held that the fact that the court, in approving a verdict and pronouncing sentence

at a former trial of the defendant upon the same charge, expressed an opinion of the defendant's guilt, does not of itself indicate prejudice.

In the recent case of *Kreling* v. *Superior Court of Los Angeles County, supra,* the highest court of California, after reviewing many authorities on the subject, held that expressions of opinion uttered by a judge in what he conceives to be the discharge of his official duties, are not evidence of bias or prejudice warranting a change of venue in a subsequent proceeding arising out of the same matter.

In the case at bar, in passing upon the sufficiency of the evidence to warrant an affirmation of the trial justice's revocation of Slayton's suspended sentence, the circuit court was called upon to decide the issue of fact whether Slayton was driving the car at the time in question. The evidence was conflicting beyond reconciliation.

Slayton testified that his companion, Carter, was driving, and that he (Slayton) was sitting on the rear seat between Hedrick and another passenger. Both Hedrick and the arresting officer testified that Slayton was driving. As has been said, all of the parties were well known to each other and the incident occurred in broad daylight. There was, then, no room for an honest mistake on the part of Slayton. In accepting the testimony of Hedrick and the officer, and rejecting that of Slayton, the circuit court in the discharge of its judicial function is bound to have found that Slayton testified falsely, for by no other course of reasoning could it have reached the conclusion that he was actually driving the car on the occasion in question.

As was said in *O'Brien* v. *O'Brien,* 294 Ky. 793, 172 S. W. (2d) 595, 609, "The fact that a court severely criticizes the testimony of a witness whom he disbelieved will not support charges that he prejudged the case or showed bias, prejudice or capricious disbelief of evidence in his disposition of the case, nor nullify or otherwise affect his findings on evidence which he believed credible." To the same effect, see *In re Pusey's Estate,* 321 Pa. 248, 184 A. 844, 850.

In *Mazer* v. *Commonwealth*, 142 Va. 649, 128 S. E. 514, and *Willis* v. *Commonwealth*, 183 Va. 125, 31 S. E. (2d) 306, relied on by the plaintiffs in error, the remarks or expressions of opinion of the trial court there condemned were spoken in the presence of the jury.

■ In the case at bar, the remarks or expressions of opinion complained of were made during the course of other proceedings. An inspection of the record now before us shows that the circuit court in no way communicated or even intimated to the jury, which tried the present case, its views as expressed at the former trials.

Except for the legal question raised by the second assignment of error, which we will presently discuss, there were no objections to the instructions granted or refused. Indeed, the record is remarkably free from objections. The truth or falsity of the testimony given by the defendants before the trial justice was left squarely and clearly to the jury for its determination.

We turn next to the inquiry as to whether the remarks of the circuit court, and the entry of its formal orders in the disposition of the revocation of the suspension, warranted a change of venue. Here the claim is that these expressions, and the entry of these orders, created "such adverse sentiment and opinion" that it was impossible for the defendants to have obtained a fair and impartial trial in that forum.

But there is no proof, by affidavit or otherwise, of any such "adverse sentiment" throughout the county. Nor is there any proof that the remarks or conclusion of the judge of the circuit court received any publicity in any manner, or were the subject of comment in the community. There is no evidence that the cases created any notoriety or even interest in the community, or that the passion or prejudice of the citizenry was in any manner aroused, either as to the charge against the defendants or the action of the circuit court thereon.

■ We have time and time again said that in a motion for a change of venue under Code, sec. 4914, the burden of proof is on the prisoner to show to the satisfaction of the

trial court good cause to have the trial of the case removed to a county other than that in which the crime is committed. 2 Michie's Digest of Virginia and West Virginia Reports, p. 563, sec. 10, and cases there cited.

The mere apprehension of a prisoner that he cannot secure a fair trial in a county is not sufficient to support a motion for a change of venue. He must establish "by independent and disinterested testimony such facts as make it appear probable, at least, that his fears and belief are well founded." *Thompson* v. *Commonwealth*, 131 Va. 847, 861, 109 S. E. 447.

In *Walker* v. *Commonwealth*, 132 Va. 819, 111 S. E. 274, it was held that the mere filing of a motion for a change of venue, supported only by argument of counsel and without evidence, was insufficient to warrant a change of venue.

In the recent case of *Maxwell* v. *Commonwealth*, 169 Va. 886, 890, 193 S. E. 507, 509, Mr. Justice Hudgins, speaking for the court, said: "A motion for a change of venue is addressed to the sound discretion of the trial judge, and his action in overruling such a motion will not be reversed unless the record affirmatively shows that there has been an abuse of that discretion."

In the same case we re-enunciated the view, expressed in *Bowles* v. *Commonwealth*, 103 Va. 816, 823, 48 S. E. 527, 529, that if "an impartial jury was in fact secured in the county where the trial was to take place, a conclusive presumption arises that the motion for a change of venue was unfounded." See also, *Wood* v. *Commonwealth*, 146 Va. 296, 303, 135 S. E. 895; *Webb* v. *Commonwealth*, 154 Va. 866, 872, 152 S. E. 366.

In the case at bar the examination of the prospective jurors on their *voir dire* is set out in the record and discloses that a fair and impartial jury was obtained without the slightest difficulty. One venireman was excluded because he lived within two miles of the courthouse where the alleged false swearing had been committed.[2] Another was excluded be-

---

[2] Acts 1936, ch. 436, p. 1033; Michie's Code of 1942, section 4899a.

cause he had been a member of the grand jury which found the indictments.

After the court had satisfied itself that the members of the panel were free from objection, counsel for the accused propounded this question to them: "Gentlemen, does any one of you gentlemen know anything about these cases, either from having been told or from having read of it or discussed it?" Upon the receipt of negative answers from the prospective jurors, counsel stated: "The jury is satisfactory to the defendants."

Unless we are to say, without proof, that the members of the jury answered falsely when they indicated that they knew nothing about the cases, how can this court hold that the expressions of opinion of the judge, given at the former trial, reached their ears?

Again, in the face of the statement of counsel, made in open court, that the "jury is satisfactory to the defendants," how can it now be claimed, in the absence of supporting proof, that it was not satisfactory?

We are of opinion that the trial court properly overruled the motions for a change of venue.

The plaintiffs in error next contend that the acquittal of Slayton of the charge that he was driving the car at the time in question estopped the Commonwealth from prosecuting them on the charge that their testimony given at the former trial was false.

Here the argument is that the jury in the first case having accepted as true the testimony of the plaintiffs in error given at the former trial, the Commonwealth could not again litigate the question of the veracity of such testimony in the subsequent perjury trial. In substance, the contention is that the principle of *res judicata* or estoppel by judgment applies.

While the question has not heretofore been presented to this court it has frequently had the attention of other courts and text writers. The authorities on the subject are in conflict.

In Freeman on Judgments, 5th Ed., Vol. 2, sec. 649, pp. 1367, 1368, that author takes the view that the doctrine of

*res judicata* applies, and that a verdict and judgment of acquittal in a former trial are a complete bar to a prosecution for perjury of the accused himself on the ground that he testified falsely at his former trial.

The same conclusion was reached in the recent case of *Ehrlich* v. *United States*, C. C. A. 5, 145 F. (2d) 693.

But even those authorities which take the view that the principle of *res judicata* bars a prosecution for perjury of the person who has been actually tried and acquitted, hold that it does not apply to the prosecution of one who was a mere witness at the former trial. This is so because such witness, other than the person who was acquitted, was not a party to the first action. See Freeman on Judgments, 5th Ed., Vol. 2, sec. 649, p. 1368; 48 C. J., Perjury, sec. 98, p. 863.

Therefore, even under the principle contended for by the plaintiffs in error, the acquittal of Slayton at the former trial was not a bar to the subsequent prosecution for perjury of the other plaintiffs in error, Carter, McDaniel, and Lanier.

But, aside from this, the weight of authority supports the rule that the acquittal of one charged with a crime is no bar to a prosecution for perjury for testimony given by him at the trial, although a conviction would necessarily import a contradiction of the verdict in the former case. 41 Am. Jur., Perjury, sec. 53, pp. 29, 30; 48 C. J., Perjury, sec. 98, pp. 862, 863. Numerous cases cited support the text.

A leading case on the subject is *People* v. *Niles*, 300 Ill. 458, 133 N. E. 252, 37 A. L. R. 1284, where the authorities are collected and reviewed. In that case, Niles had been tried and acquitted, mainly on his own testimony, of the charge of having received stolen property knowing it to have been stolen. Shortly thereafter he was indicted and convicted of perjury for having given false testimony at the former trial. In overruling the contention that the principle of *res judicata* applied, the court pointed out that not one, but two crimes were involved,—larceny and false swearing,—and that the issues in each were not the same. To sustain the contention of the accused, it reasoned, would lead to the re-

sult that an accused, through his fraud and false swearing, could secure his acquittal at the hands of a jury in the first proceeding, and thus escape punishment for both crimes. "We must declare that the law is guilty of no such folly," it said (133 N. E., at page 254).

In *Jay* v. *State*, 15 Ala. App. 255, 73 So. 137 (certiorari denied, 198 Ala. 691, 73 So. 1000), in rejecting the contention that the principle of *res judicata* applied, the court said (73 So., at page 139): " * * * while public policy, on the one hand, creates the doctrine of *res judicata*, it also, on the other, requires that perjurers be brought to trial. It would be a monstrous doctrine to hold that a person could go into a court of justice and by perjured testimony secure an acquittal, and because acquitted he could not be tried for his perjury; this would be putting a premium upon perjury and allowing a scoundrel to take advantage of his own wrong. * * * "

See also, *State* v. *Bissell*, 106 Vt. 80, 170 A. 102; and other cases collected in annotation in 37 A. L. R. 1290, 1292.

 We agree with and adopt the majority view as exemplified by these latter authorities. While the principle of estoppel by judgment serves a wide and useful public policy, it should not be extended to shield crime or to grant immunity to criminals. Perjury strikes at the very heart of the administration of justice and holds the courts up to contempt when they allow the perjurer to go unpunished. The policy of the law demands that judicial proceedings shall be fair and free from fraud, that witnesses be encouraged to tell the truth, and that they be punished when they do not.

We find no error in the judgment complained of, and it is

*Affirmed.*