### Richmond

## MORRIS ODELL MASON

v.

## COMMONWEALTH OF VIRGINIA

April 20, 1979.

Record No. 781607.

Present: All the Justices.

Daniel Hartnett (Henry P. Custis, Jr.; Robert B. Phillips; Ayres, Hartnett & Custis, on brief), for appellant.

James E. Kulp, Deputy Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.

HARMAN, J., delivered the opinion of the Court.

Morris Odell Mason (defendant or Mason) is before the court for automatic review of his death sentence, Code § 17-110.1A, which has been consolidated with an appeal from his conviction, Code § 17-110.1F. As required by statute, this case has received priority on our docket. Code § 17-110.2.

After a bifurcated bench trial, Mason, who pleaded guilty to capital murder, was convicted by the court of wilful, deliberate and premeditated murder during the commission of or following rape, Code § 18.2-31(e), and, after a penalty hearing, his punishment was fixed at death. After a post-conviction sentencing hearing at which the court received the report of a probation officer, the court confirmed the penalty fixed at the earlier penalty hearing and sentenced defendant to be executed. Code § 19.2-264.5.

The medical evidence discloses that the victim, a 71 year-old woman, whose nude body was discovered in a chair near the front door of her burning dwelling, died of blunt force injury to the abdomen which lacerated her liver. Examination of the partially incinerated body of the victim disclosed that a small nail had been

driven part way through her left wrist, her lower left ulna and radius were fractured, and her anal opening was dilated and "slightly patulous".

Laboratory examination of an ax discovered near the body revealed hair samples which were consistent with the victim's hair. An examination of the dwelling by an expert arson investigator determined that the fire was incendiary in nature and originated in the chair where the body was found.

The homicide occurred on the night of May 13, 1978. Defendant was arrested about 6:15 A.M. on May 15. Following his arrest, defendant was transported to the Northampton County Jail where his *Miranda* rights were read and explained to him. He was not questioned at that time. Defendant was interrogated the same afternoon after again receiving *Miranda* warnings. On this occasion, as well as on subsequent occasions, Mason made a statement to the police in which he admitted raping and killing the victim and setting fire to the dwelling.

On brief and at oral argument, defendant claims that his conviction should be reversed or that the penalty should be modified on the following grounds:

I. the death penalty statutes are facially unconstitutional;

II. the trial court erred in refusing his request for funds for a private psychiatric examination prior to his guilt trial;

III. the trial judge erred in refusing to disqualify himself prior to defendant's penalty trial;

IV. the trial court erred in admitting evidence at his penalty trial of convictions for other offenses prior to the expiration of the period during which the orders of conviction might be modified, vacated or suspended, and prior to expiration of the time in which an appeal could be perfected; and

V. imposition of the death sentence under the circumstances of this case is clearly excessive and disproportionate to the penalty imposed in similar cases.

We will consider and discuss the issues raised in the sequence set forth above.

I. *Constitutional Challenge of the Death Penalty Statutes.*

As in *Smith* v. *Commonwealth,* 219 Va. 455, 248 S.E.2d 135 (1978), and *Waye* v. *Commonwealth,* 219 Va. 683, 251 S.E.2d 202 (1979), Mason challenges the constitutionality of Virginia's capital sentencing procedure. He argues, as did defendants in *Smith* and *Waye,* that the statutes are facially invalid on grounds that the death penalty is cruel and unusual punishment under the Eighth and Fourteenth Amendments. Relying on *Jurek* v. *Texas,* 428 U.S. 262 (1976), *Proffitt* v. *Florida,* 428 U.S. 242 (1976), and *Gregg* v. *Georgia,* 428 U.S. 153 (1976), we sustained the facial constitutionality of the Virginia statutes in both *Smith* and *Waye.* For the same reasons set forth there, we reject defendant's claim here.

II. *Funding of Private Psychiatric Examination.*

After Mason's preliminary hearing before the General District Court but prior to his guilt trial in the Circuit Court, Mason's court-appointed counsel filed a motion seeking an allowance of state funds to employ an independent psychiatrist to examine Mason to determine whether "he is competent at this time to assist in his own defense and/or whether or not he was competent at the time the offenses with which he is charged were committed." This motion was renewed after Mason's guilty plea to capital murder. The trial court denied the motion on each occasion.

Defendant argues that the Commonwealth was obligated to provide him with adequate means by which he could raise the defense of insanity and that a refusal of the trial court to provide funds to enable him to employ a psychiatrist of his own choice was error since it deprived him of adequate means to raise this defense. He points to no authority directly sustaining his position.

This court has previously held that there is no requirement that the Commonwealth provide funds to enable a defendant to employ a psychiatrist of his own choosing. In *Houghtaling* v. *Commonwealth,* 209 Va. 309, 163 S.E.2d 560 (1968), *cert. denied,* 394 U.S. 1021 (1969), we pointed out:

> "The precise point in issue, arising under similar circumstances, was before the United States Supreme Court in *United States* v. *Baldi,* 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549, 556 (1953). There, the defendant contended that 'the assistance of a psychiatrist was necessary to afford him adequate counsel' and that 'he should have been given technical pretrial as-

sistance by the State.' The court said, 'We cannot say that the State has that duty by constitutional mandate.' That holding is applicable to and dispositive of the question before us."

209 Va at 312-13, 163 S.E.2d at 562.

At his counsel's request prior to his preliminary hearing on this and other pending charges, Mason received two separate psychiatric examinations, one by W. A. Dretzgen, M.D., at the Eastern Shore Mental Health Center, and the other by the psychiatric staff at Central State Hospital. Both examinations showed that Mason was able to assist in his own defense and that he understood the nature and seriousness of the pending charges. The staff at Central State Hospital, where Mason was confined for more than a month, conducted a complete set of psychiatric, psychological and sociological evaluations of Mason and concluded that he was not insane then or at the time he committed the various offenses with which he stood charged. Copies of these reports were provided to the court, the Commonwealth's Attorney and counsel for defendant. The examining physicians were available to defense counsel for consultation and advice. Indeed, the Central State Hospital staff invited further inquiry by either the court or counsel. In those circumstances, the state has provided an accused with an adequate opportunity to place any issues pertaining to his mental condition before the trial court. *Satterfield v. Zahradnick*, 572 F.2d 443, 445 (4th Cir.), *cert. denied sub nom., Satterfield v. Mitchell*, 436 U.S. 920 (1978).

III. *Trial Judge's Refusal to Disqualify Himself.*

■ Defendant was arraigned on September 28 on the capital murder charge. On the same day he was also arraigned on fifteen other non-capital felony counts for offenses committed against five victims between May 2 and May 15. He entered a plea of guilty to each charge, including capital murder.

In examining the defendant before accepting his guilty plea to the capital murder charge, the trial court specifically advised Mason that a separate penalty hearing would be held by the court to determine whether his sentence would be death or life imprisonment. Neither defendant nor his counsel raised any objection to acceptance of the guilty plea on the capital murder count, knowing that the judge would determine the appropriate punishment at the

later penalty hearing. Trial of the non-capital felony cases was completed on September 28 and the defendant was sentenced for each of those offenses.

On the following day the trial court reconvened to conduct the penalty hearing in the capital murder case. At that time defendant, by counsel, moved for disqualification of the trial judge on the ground that the evidence which the court had heard on the preceding day in the non-capital felony cases necessarily prejudiced the judge against defendant, and on the further ground that the statute did not contemplate that the trier of fact in the penalty hearing would have previously heard detailed evidence of other crimes committed by defendant.

Holding that defendant's prior criminal record was relevant and fully admissible at the penalty trial, Code § 19.2-264.4B,C, and that the motion was untimely, the trial judge declined to disqualify himself.

Evidence of defendant's prior criminal record was admissible at his penalty trial. Code § 19.2-264.4B,C; *Smith v. Commonwealth, supra,* 219 Va. at 471, 248 S.E.2d at 145. At the penalty stage in the proceeding, the death penalty could not be imposed unless the Commonwealth had proved at least one of the two enumerated aggravating circumstances beyond a reasonable doubt. Code § 19.2-264.4C.*

We have held that a judge is not disqualified to sit in a criminal case when, in the disposition of a matter arising out of the same facts, he has formed or expressed an opinion as to the guilt of the accused. *Slayton v. Commonwealth,* 185 Va. 371, 38 S.E.2d 485 (1946). Mere knowledge of background information about a criminal defendant is not sufficient to require recusal. *See Webster v. United States,* 330 F. Supp. 1080 (E.D. Va. 1971).

In non-jury cases, it will be presumed that the trial judge did not confuse the evidence in one case with that in another, *United States v. Smith,* 390 F.2d 420 (4th Cir. 1968); *Dove v. Peyton,* 343

---

*Code § 19.2-264.4C provides:

"C. The penalty of death shall not be imposed unless the Commonwealth shall prove beyond a reasonable doubt that there is a probability based upon evidence of the prior history of the defendant or of the circumstances surrounding the commission of the offense of which he is accused that he would commit criminal acts of violence that would constitute a continuing serious threat to society, or that his conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind or aggravated battery to the victim."

F.2d 210 (4th Cir. 1965), and it will also be presumed, in the absence of an affirmative showing to the contrary, that only material and competent evidence is considered. *Havelock* v. *United States*, 427 F.2d 987 (10th Cir.), *cert. denied*, 400 U.S. 946 (1970).

██ Furthermore, at the time he tendered his guilty plea to capital murder, defendant and his counsel both knew that the trial judge had already heard defendant's guilty pleas to and most of the evidence regarding the fifteen non-capital charges. A motion for disqualification must be made when the movant learns the grounds upon which the motion is based; thereafter, the motion comes too late.

IV. *Admission at Penalty Trial of Certified Copies of Conviction Orders in Non-Capital Cases.*

██ At the penalty trial copies of the indictments and conviction orders in the fifteen non-capital felony cases were introduced. Since these orders were still subject to modification by the trial court, Rule 1:1, and the time for filing for appellate review had not expired, Rule 5:6, defendant claims this was error.

As noted earlier, these convictions were based on guilty pleas which the record shows were both voluntarily and intelligently tendered. Such a plea is a waiver of all defenses other than those jurisdictional. When a conviction is rendered upon such a plea and the punishment fixed by law is in fact imposed in a proceeding free of jurisdictional defect, no appeal will lie because there is nothing to appeal. *Peyton* v. *King*, 210 Va. 194, 196-97, 169 S.E.2d 569, 571 (1969). Moreover, defendant's prior criminal record was clearly admissible at the penalty hearing for the reasons set forth in Part III, *ante*.

V. *Propriety of the Death Sentence.*

Defendant's final claim is that the death sentence was imposed under the influence of passion and prejudice and is excessive and disproportionate to the penalty imposed in similar cases.

██ In imposing the death sentence upon Mason, the trial judge found that the evidence established both of the aggravating circumstances enumerated in Code § 19.2-264.4C beyond a reasonable doubt. We agree with that finding.

The record shows a crime perpetrated upon an elderly woman whom the defendant did not know. He stated that his reason for so

acting was that he just made up his mind to rape and kill someone. He went to the victim's home at night, threatened her and forced her to disrobe. He instructed her to close the curtains. When the victim cried out for help, he knocked her "across the room" and then raped her. While the victim was pleading for her life, defendant struck her several times about the head and body with an ax and "shoved" the ax handle into her rectum. At some point defendant drove a nail into the victim's left wrist and fractured two bones in her lower left arm.

After raping and beating the victim, who was then close to death, defendant placed her in a chair and set fire to it, an effort to conceal his criminal conduct. Shortly after leaving the burning house, defendant returned seeking a bag, which he believed would reveal his fingerprints.

It is difficult to conceive a more outrageously or wantonly vile, horrible or inhuman course of conduct than that of the defendant toward the victim. Not only was there aggravated battery and torture of the victim, she was set on fire while still alive, although *in extremis*.

We also sustain the trial court's finding that the prior history of the defendant and the circumstances surrounding this capital murder established a probability that defendant would commit criminal acts of violence that would constitute a continuing serious threat to society.

The record shows that Mason, who was serving concurrent sentences for arson and grand larceny, was paroled from the state penal system on April 12, 1978. Only three weeks later, on May 2, he broke and entered a dwelling house, while armed with a deadly weapon, murdered the elderly occupant and set fire to the dwelling.

The capital murder which is the subject of review occurred on May 13. On the following day, Mason again broke and entered a dwelling and committed arson. He then went to another home where he armed himself, maimed one young girl, and sodomized and abducted her younger sister. Later, he raped the sister and, when she tried to escape, attempted to kill her.

Certainly, this evidence fully supports the trial court's finding of a probability that Mason would commit criminal acts of violence that would constitute a continuing serious threat to society.

We conclude, therefore, that the sentence of death was imposed under the standards established by the statute and decided cases, and was not imposed under the influence of passion, prejudice or any other arbitrary factor.

 Neither do we believe that the sentence imposed on Mason was excessive and disproportionate to the penalty imposed in similar cases. When the evidence here is compared with that in *Smith* and *Waye, supra,* the only other cases reviewed by this court under the revised death penalty statutes, it discloses aggravating circumstances here which equal or exceed the aggravating factors found in each of those cases.

Having given the defendant's case both appellate and independent review, we conclude there is no reversible error in either his conviction or sentence, and we find no other reason to disturb or commute his death sentence.. Therefore, we will affirm the judgment pronounced by the trial court.

*Affirmed.*