## Richmond

### Buddy Earl Justus

### v.

### Commonwealth of Virginia

October 16, 1981.

Record No. 810156.

Present: All the Justices.

668

*H. Gregory Campbell, Jr. (Robert W. Spessard, Jr.; Edward James Woodhouse, Jr.; Gilmer, Sadler, Ingram, Sutherland & Hutton; Spessard & Spessard; Goldsmith, Anderson & Woodhouse,* on brief), for appellant.

*Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

In a previous trial, Buddy Earl Justus was convicted of capital murder during the commission of, or subsequent to, rape, and sentenced to death. Code § 18.2-31(e). On appeal, we reversed the

conviction and remanded the case for a new trial because of error in the selection of the jury. *Justus* v. *Commonwealth,* 220 Va. 971, 266 S.E.2d 87 (1980). On remand, the court granted a change of venue and transferred the case from the Circuit Court of Montgomery County to the Circuit Court of James City County and the City of Williamsburg. A jury again found Justus guilty of capital murder and recommended the death sentence. After considering a presentence report compiled by a probation officer, and hearing testimony and argument, the court confirmed the jury's verdict and ordered that Justus be executed. Code § 17-110.1(A) requires that we review the death sentence, and we have consolidated this review with the appeal of his conviction, Code § 17-110.1(F), and given them priority on our docket as mandated by Code § 17-110.2.

On October 3, 1978, the husband of Ida Mae Moses found her nude, dead body lying on a bed in their home located in the Ironto section of Montgomery County. She had been shot in the head three times. He immediately summoned the rescue squad and the police. In their investigation the police retrieved various samples from the scene, including hair specimens from the victim, carpet fibers, fingerprints and clothing, and made several photographs of the victim. Missing from the residence were a bag of pennies and a .22 caliber "snub-nosed" revolver.

The forensic pathologist who conducted the autopsy testified that Mrs. Moses had been shot twice in the face and once in the back of the head and that any one of the gunshot wounds would have been fatal. A forensic analysis of swabs taken during the autopsy revealed the presence of seminal fluid in the vagina.

On October 10, 1978, a Montgomery County investigator apprehended Justus who, after being informed of his *Miranda* rights, confessed that he had burglarized the Moses home and murdered Mrs. Moses with a firearm, but specifically denied that he had raped her. The arresting officer took from Justus a .22 caliber "snub-nosed" revolver which was turned over to a firearms identification and ballistics expert for testing. Justus was charged with capital murder during the commission of, or subsequent to, the rape of Mrs. Moses.

At trial, Dale Dean Goins testified that, while he was hitchhiking in Georgia the day after Mrs. Moses' murder, Justus stopped and gave him a ride. Goins stated that on two occasions Justus admitted that he had raped and killed a woman in Vir-

ginia. According to Goins, Justus produced a bag of pennies he allegedly had taken from the woman.

Expert testimony regarding the ballistics tests of the gun seized from Justus indicated that test rounds fired from that weapon matched a slug removed from the victim. The expert witness opined that the slug removed from Mrs. Moses had been fired from the gun seized from Justus.

A forensic serologist testified that secretion tests, utilizing samples of hairs and swabs retrieved from the victim and saliva samples taken from Justus, indicated Justus "could not be excluded" as a source of the seminal fluid present in the decedent's vagina because his blood/fluid type was deemed "consistent".

## I. *Issues Previously Adjudicated.*

Three assignments of error stemming from the retrial relate to issues resolved in the former appeal. We reaffirm our prior holdings as follows: (1) The court properly refused a private psychiatric examination at the expense of the Commonwealth, 220 Va. at 978, 266 S.E.2d at 92. *Martin* v. *Commonwealth*, 221 Va. 436, 446, 271 S.E.2d 123, 129 (1980). (2) The court did not err in permitting the Commonwealth to prove that Mrs. Moses was pregnant at the time of her murder, 220 Va. at 979, 266 S.E.2d at 93. (3) Two color photographs of the victim were admissible at the sentencing stage of the trial, 220 Va. at 980, 266 S.E.2d at 93.

## II. *Recusal of Trial Judge.*

In his first assignment of error, Justus argues that the trial judge improperly sat in the case on remand, claiming that because he had presided at the first trial, his impartiality and objectivity were impaired, and that he had failed to enforce the safeguards ensuring fair trials in capital murder cases. Justus supports his argument with the following remark made by the court before trial:

And there was a motion for me to disqualify myself from hearing the defendant's retrial, which I ought to grant, but I don't see how I can under the circumstances . . . . I am sure that I can see that Mr. Justus receives a fair trial in Williamsburg. . . .

A trial judge must exercise reasonable discretion to determine whether he possesses such bias or prejudice as would deny the defendant a fair trial. *Slayton* v. *Commonwealth,* 185 Va. 371, 376, 38 S.E.2d 485, 488 (1946). In *Slayton,* we said:

> Frequently, in the disposition of cases, both civil and criminal, a judge is called upon to form and express an opinion upon a matter or issue which may come before him in a subsequent proceeding arising out of the same state of facts. The courts are practically unanimous in the view that neither the forming nor the expression of such a conclusion, under such circumstances, disqualifies a judge in the subsequent matter, particularly where the issue of fact in the latter proceeding is to be determined by a jury. [Citations omitted.]

*Id.*

We cannot say that the trial judge abused his discretion. Upon the original argument on the motion to disqualify, the trial judge stated:

> I think I can give him a fair and impartial trial based on the law and evidence and what comes before the Court, and that's what the state pays me for is to try these cases and I'll be just as fair as I can and I will deny your motion [to disqualify myself], gentlemen.

We do not feel that a *per se* rule requiring a judge to recuse himself on retrial of a capital murder case is necessary to assure a fair trial.

A comparable situation arose in *Mason* v. *Commonwealth,* 219 Va. 1091, 254 S.E.2d 116, *cert. denied,* 444 U.S. 919 (1979), when the defendant sought to disqualify the trial judge in the penalty phase of a capital murder conviction. The same judge had tried and convicted the defendant on 15 non-capital felony charges. Consistent with *Slayton,* we held that the judge had not erred in declining to recuse himself.

Other states follow the same rule. In *Walker* v. *State,* 241 Ark. 300, 309-10, 408 S.W.2d 905, 912 (1966), *cert. denied,* 386 U.S. 682 (1967), the Arkansas Supreme Court considered similar circumstances and stated:

It is an established rule of law that while a trial judge may have an opinion as to the merits of the case on trial, this does not make him biased or prejudiced as to the conduct of the trial. When challenged for bias and prejudice, it is for the trial court to search his conscience and decide whether to recuse himself from the case. We find . . . the trial court conducted the trial in an exemplary manner and without any bias or prejudice toward the accused.

*See also* Annot. 60 A.L.R.3d 176 (1974).

The record fails to reveal any evidence of judicial prejudice, and we find no merit in this assignment of error.

### III. *Challenge to Witherspoon.*

■ In *Witherspoon* v. *Illinois,* 391 U.S. 510, 522 (1968), the United States Supreme Court held that "jurors may not constitutionally be excluded for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." We have construed this language "to require, as a prerequisite to exclusion of a juror, an irrevocable commitment to vote against the death penalty, rather than a general objection." *Coppola* v. *Commonwealth,* 220 Va. 243, 250, 257 S.E.2d 797, 802 (1979), *cert. denied,* 444 U.S. 1103 (1980). *See Adams* v. *Texas,* 448 U.S. 38 (1980), and *Lockett* v. *Ohio,* 438 U.S. 586 (1978). But Justus contends that a jury seated after a *Witherspoon voir dire* is conviction-prone and, hence, not constitutionally impartial.[1]

Before retrial, Justus filed a written motion to prohibit *voir dire* questioning on jurors' attitudes toward the death penalty. He also filed a second motion asking the trial court to take judicial notice of evidence stipulated in *Hovey* v. *Superior Court of Alameda Cty.,* 168 Cal. Rptr. 128, 616 P.2d 1301 (1980). This stipulated

---

[1] "Underlying the guilt-bias argument is the premise that jurors who have no scruples against capital punishment will necessarily be more prone to convict than jurors who express some reservations regarding the death sentence. Support for this premise is drawn from psychological studies documenting the thesis that a given individual will tend to run a coherent, discernible pattern with respect to attitudes and values. A juror unopposed to capital punishment, according to the thesis, fits into the mold of the so-called 'authoritarian personality' who tends to be more condemning, suspicious, and non-love-seeking than one who has some reservations about the death penalty." *Spinkellink* v. *Wainwright,* 578 F.2d 582, 593, n. 15 (5th Cir. 1978), *cert. denied,* 440 U.S. 976, *rehearing denied,* 441 U.S. 937 (1979), quoting Comment, 1969 *Utah L. Rev.,* 154, 162.

evidence came from expert testimony and exhibits used in *People v. David Lee Moore and Kenneth Lynne Moore,* No. 67113 (Alameda Cty. (Cal.) Super. Ct. 1979) to show a correlation between conviction rates and attitudes toward the death penalty. Justus also offered the following documents filed in *Hovey:* (1) Petition for Writ of Mandate and/or Prohibition and Request for Stay filed in Supreme Court of California November 27, 1979; (2) Petitioner's Opening Brief; and (3) Petitioner's Reply Brief and Answer to Brief of Amicus Curiae.

The evidence proffered is inadmissible because it violates the hearsay rule. But even if Justus had met his evidentiary requirements, we would still reject his argument. All the studies were compiled on statistics from other states. They do not show a correlation between conviction-proneness and attitudes toward the death penalty among Virginia jurors. In *Turner* v. *Commonwealth,* 221 Va. 513, 523, n. 9, 273 S.E.2d 36, 42, n. 9 (1980), we stated that a study "based upon statistics compiled in other states . . . was of little utility in establishing the potential of prejudice in Virginia."

Even assuming the studies showed a valid correlation between Virginia juror attitudes and conviction-proneness, we must reject the studies for another reason. The type of jury studied differs from the particular jury chosen to try Justus' case. In *Hovey,* the Supreme Court of California made a detailed analysis of the social science studies presented in the trial court and concluded that the studies could not reflect the California death-qualifying jury because the jury pool studied did not exclude those potential jurors who would automatically vote for the death penalty. Under the California statute, such jurors were subject to challenge for cause. 168 Cal. Rptr. at 170, 616 P.2d at 1343. In our situation, the same was true of the jury pool, not as a matter of statute but as a matter of fact. The court excused prospective juror Fosdick because he opposed the death penalty and prospective juror Small because he preferred the death penalty. Thus, the Virginia practice in this case corresponded with the California statute, and the experiments performed did not conform to the Virginia practice.

We hold, therefore, that the proof proffered was inadmissible.

## IV. *Voir Dire Examination About Religious Matters.*

During the *voir dire* examination, Justus' counsel sought to propound the following questions: (1) "What is your religious

preference?" (2) "Do you attend a local church?" (3) "Would you classify yourself as a regular or occasional attender?" The trial court refused these questions because they would invade a potential juror's privacy. We agree with the trial court.

In *United States* v. *Barnes,* 604 F.2d 121, 137, 141 (2d Cir. 1979), *cert. denied,* 446 U.S. 907 (1980), the court said:

> What is required of a trial judge in his conduct of the voir dire . . . is that he permit at least some questioning with respect to any material issue that may arise, actually or potentially, in the trial.
>
> . . . .
>
> As to religion, our jury selections system was not designed to subject prospective jurors to a catechism of their tenets of faith, whether it be Catholic, Jewish, Protestant, or Mohammedan, or to force them to publicly declare themselves to be atheists. Indeed, many a juror might have a real doubt as to the particular religious category into which they could properly place themselves. The same can be said of ethnic background.

The defense counsel had the duty to identify a question's relevance to an actual or potential issue in the case. The trial court asked whether jurors held religious scruples about the death penalty. We hold that this is the proper extent of inquiry.

### V. *Requiring Counsel to Remain Seated During Voir Dire Examination.*

■ On appeal, Justus objects to the trial court's requirement that defense counsel remain seated while examining potential jurors on *voir dire*. The record reflects no objection to this ruling. Under our Rule 5:21 regarding timely objection, "[e]rror will not be sustained to any ruling below unless the objection was stated with reasonable certainty at the time of the ruling . . . ."

Furthermore, the conduct of a trial is committed to the trial judge's discretion, and absent evidence of an abuse of this discretion, we will not disturb his rulings on that subject. In this record, we find no evidence of an abuse of discretion or prejudice to Justus resulting from the ruling requiring counsel to remain seated.

## VI. *Refusal to Declare a Recess.*

 Justus contends the trial court erred when it refused his request to declare a luncheon recess to provide defense counsel more time to confer about peremptory strikes. Justus argues that the 15 minutes allowed for counsel to confer was insufficient. As we have just said, the trial court has broad discretion in conducting a trial, and we will not disturb its rulings on that subject absent an abuse of discretion.

In this case, the court pointed out that it had permitted defense counsel to investigate the jury panel before trial and to conduct *voir dire* separately. The court offered counsel time in addition to the 15 minutes allowed, but counsel refused the offer. We find no abuse of discretion in this matter.

## VII. *Refusal to Sequester the Jury.*

 Justus argues that the trial court should have sequestered the jury during his retrial to prevent prejudicial publicity reaching the jurors. We encountered the identical argument in *Turner* v. *Commonwealth, supra,* a capital murder prosecution in which the venue was changed from Southampton to Northampton County. We said:

> [A] judge has discretion in determining whether to sequester a jury. The mere fact of media coverage does not require a judge to sequester a jury. *Thompson* v. *Commonwealth,* 219 Va. 498, 247 S.E.2d 707 (1978). A trial judge's discretion regarding sequestration extends to cases involving capital punishment.

221 Va. at 525, 273 S.E.2d at 43.

The trial judge cautioned the jurors not to discuss the case or expose themselves to extra-judicial influence. Nothing in the record suggests that the jury ignored this admonition, and we uphold the ruling.

## VIII. *Failure to Strike the Evidence.*

 Justus contends that the capital aspect of the evidence should have been struck either at the conclusion of the Commonwealth's case or at the conclusion of all the evidence. Justus argues that the evidence fails to show he raped the victim; the evi-

dence shows no more than recent sexual intercourse on the victim's part and an opportunity on the defendant's part to commit the offense. Justus argues further that the admissions he allegedly made to the hitchhiker, Goins, concerning rape are unworthy of belief because Goins was a convicted felon and an admitted user of alcohol and drugs.

We believe, however, that the trial court properly left to the jury the questions of Goins' credibility and the weight to be given his testimony. If the jury believed Goins and considered his testimony entitled to weight, it would have been justified in returning a capital verdict. Hence, the trial court did not err in refusing to strike the evidence.

## IX. *Propriety of Second-Degree-Murder Instruction.*

■■■ Justus now contends the jury should have been instructed that it could return a verdict of murder in the second degree. Although he did not proffer a second-degree-murder instruction, citing *Ball* v. *Commonwealth,* 221 Va. 754, 273 S.E.2d 790 (1981), he urges this court to consider the issue to "attain the ends of justice." Rule 5:21.

*Ball,* however, affords Justus no support. We employed the saving clause of Rule 5:21 there in order to consider an instruction granted without objection. But that instruction permitted a capital verdict when the evidence failed to show the commission of a capital offense. Here, as indicated in Part VIII, *supra,* the evidence was sufficient to support a capital verdict.

Furthermore, in *Ball,* the accused proffered and was refused an instruction on second-degree murder. We held the refusal was not error because there was no evidence to support a finding of second-degree murder. The rule followed in *Ball* is that a second-degree-murder instruction is appropriate only where there is evidence to support it, *Painter* v. *Commonwealth,* 210 Va. 360, 367, 171 S.E.2d 166, 171 (1969), *Wooden* v. *Commonwealth,* 208 Va. 629, 634, 159 S.E.2d 623, 627 (1968), and the evidence must amount to more than a scintilla, *Hatcher* v. *Commonwealth,* 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978). These principles apply in both capital and non-capital cases.[2] *Linwood Earl Briley* v. *Commonwealth,* 221 Va. 532, 541, 273 S.E.2d 48, 54 (1980).

---

[2] Code § 19.2-264.3. **Procedure for trial by jury.** — A. In any case in which the offense may be punishable by death which is tried before a jury the court shall first submit to the

Here, the only real issue before the jury was whether Justus was guilty of capital murder or first-degree murder. The evidence did not support a second-degree-murder instruction. Hence, even if the point had been preserved for appeal, the result would have been adverse to Justus.

## X. *Argument of Commonwealth's Attorney.*

### A. *Statement about Murder Inference.*

■ The defendant contends that the prosecuting attorney misspoke the law in his closing argument because he did not state the Virginia rule that all murder is inferentially of the second degree. As we have said heretofore, the only issue before the jury was whether the defendant was guilty of capital murder or first-degree murder. We conclude that the prosecutor's argument was proper and within the framework of issues before the jury.

### B. *Reference to Husband.*

■ Justus argues that the trial court improperly refused his motion to grant a mistrial, made on the ground the Commonwealth's Attorney's rebuttal argument was prejudicial.

During cross-examination of the forensic serologist, the defense counsel asked whether she had tested Mr. Moses and could include or exclude him as a possible source of the seminal fluid found in Mrs. Moses. The witness stated Mr. Moses had not been tested. During closing argument, the defense repeated that Mr. Moses had not been tested. In rebuttal, the Commonwealth's Attorney asked the jury to "[t]hink . . . for a moment" about the defense's suggestion that Mr. Moses had sexual intercourse with his wife after she had been murdered by Justus.

The record indicates that counsel objected to the argument only after the jury retired, seeking a mistrial because an admonition to the jury could not correct the alleged error. The trial court refused the motion for mistrial, ruling the argument was proper under the circumstances. We agree with the trial court.

---

jury the issue of guilt or innocence of the defendant of the offense charged in the indictment, *or any other offense supported by the evidence* for which a lesser punishment is provided by law and the penalties therefor. [Emphasis added.]

## XI. *Refusal to Permit Justus to Make Opening Statement to the Jury in Penalty Phase.*

On July 29, 1980, Justus filed a written motion asking leave to participate in his trial as co-counsel. The court granted the motion although in the earlier trial Justus had not requested self-representation and he had failed to articulate an adequate reason for the motion in the second trial.

In the second trial, Justus did not participate in the guilt phase, but at the outset of the penalty phase, he gave the opening statement. The Commonwealth objected because the nature of Justus' statements was testimonial.[3] The court upheld the Commonwealth's objection. The trial judge observed that Justus' motion for self-representation was a ploy for the defendant to testify without the safeguard of an oath or the risk of cross-examination or impeachment.

The United States Supreme Court recently stated in *Faretta* v. *California,* 422 U.S. 806, 834, n. 46 (1975), that the "right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with the relevant rules of procedural and substantive law." In *Williams* v. *State,* 549 S.W.2d 183, 187 (Texas Ct. of Crim. App. 1977), the court said "[t]he rules of evidence, procedure, and substantive law will be applied the same to all parties in a criminal trial whether that party is represented by counsel or acting *pro se.*" *See* Annot. 77 A.L.R.2d 1233 (1961).

---

[3] Justus made the following opening statement as counsel:

Mr. Campbell: Mr. Justus, himself, will make the opening statement, your Honor.

. . . .

Mr. B. E. Justus: Ladies and gentlemen, I'm Buddy Justus, and I'd like to tell you a little bit about myself, and give you a little background of my life. And I don't know where to start off at.

I come from a very large family, and my mom and my dad both were alcoholics, and I was beat when I was little, when they would get drunk. And I never had proper education; feel like life as a decent citizen should be. I was more or less on my own from the time I was ten years old, up to now.

I joined the Marine Corps, and I didn't like it, so I got a general discharge under honorable conditions, after I was old enough to join. I was in the Marine Corps. for a very short time; and I came to Roanoke, Virginia.

Mr. Graybeal: Excuse me, your Honor, this is new to me . . . . This portion of the trial will be to acquaint the jury what we're doing. This is testimony and evidence in the trial, and is not an opening statement in the sentencing phase.

The trial court, in its discretion, could permit Justus to act as co-counsel, but this status conferred no privilege upon him to ignore settled rules of evidence and procedure. We hold that the trial court did not err in sustaining the Commonwealth's objection to Justus' opening statement.

## XII. *Statutory Review of Death Sentence.*[4]

### A. *Was the Sentence a Product of Arbitrary Factors?*

We have carefully reviewed the voluminous record in this case and did not find, nor has Justus pointed out, evidence of any passion, prejudice or other arbitrary factors exerting an influence upon the jury. We therefore hold that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor.

### B. *Excessiveness or Disproportionality.*

In *Stamper* v. *Commonwealth,* 220 Va. 260, 283-84, 257 S.E.2d 808, 824 (1979), *cert. denied,* 445 U.S. 972 (1980), we said that "the test is whether penalty juries in this jurisdiction generally impose the death sentence for conduct similar to that of the defendant" and at the same time, in *Coppola* v. *Commonwealth,* 220 Va. at 256, 257 S.E.2d at 806, we said "our consideration of similar cases should be limited generally to cases arising in Virginia under our revised death penalty statutes."

We have reviewed five previous death penalties imposed for murder during the commission of, or subsequent to, rape.[5] Consid-

---

[4] Code § 17-110.1. **Review of death sentence.** — A. A sentence of death, upon the judgment thereon becoming final in the circuit court, shall be reviewed on the record by the Supreme Court.

. . . .

C. In addition to consideration of any errors in the trial enumerated by appeal, the court shall consider and determine:

1. Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and

2. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

[5] *Smith* v. *Commonwealth,* 219 Va. 455, 248 S.E.2d 135 (1978), *cert. denied,* 441 U.S. 967 (1979), defendant raped victim at knife-point, choked, drowned, then stabbed her several times in the back.

*Waye* v. *Commonwealth,* 219 Va. 683, 251 S.E.2d 202, *cert. denied,* 442 U.S. 924 (1979), defendant raped a 61-year old woman, biting her breasts and buttocks, battered her face beyond recognition, stabbed her 42 times and poured Clorox over her.

ering the ghastly conduct of Justus, the condition of the victim at the time, and the vicious nature of the crime, we conclude that the sentence was neither excessive nor disproportionate.

## XIII. *Cruel and Unusual Punishment.*

■ Finally, Justus argues that the death penalty is cruel and unusual punishment in violation of the 8th and 14th Amendments of the federal Constitution, citing *District Attorney for Suffolk District* v. *Watson,* 411 N.E.2d 1274 (Mass. 1980).

We expressly rejected this argument in *Stamper* v. *Commonwealth, supra, Waye* v. *Commonwealth, supra,* and *Smith* v. *Commonwealth, supra,* and we reaffirm our prior holdings.

For these reasons, the judgment of the lower court will be

*Affirmed.*

---

*Mason* v. *Commonwealth,* 219 Va. 1091, 254 S.E.2d 116, *cert. denied,* 444 U.S. 919 (1979), defendant raped a 71-year old woman, hit her, beat her with an ax, drove a nail through her wrist, then burned her alive.

*Giarratano* v. *Commonwealth,* 220 Va. 1064, 266 S.E.2d 94 (1980), defendant raped and strangled a 15-year old girl.

*James Dyral Briley* v. *Commonwealth,* 221 Va. 563, 273 S.E.2d 57 (1980), defendant and two others raped the victim, then shot her four times.