THE COURT OF APPEALS OF VIRGINIA


Before:  Chief Judge Fitzpatrick, Judges Benton, Elder,
         Annunziata, Bumgardner, Frank, Humphreys, Clements,
         Agee,* Felton and Kelsey
Argued at Richmond, Virginia


KENNETH L. JACKSON, S/K/A
 KENNETH LAMONT JACKSON
                                          OPINION BY
v.   Record No. 2930-01-1           JUDGE ROBERT J. HUMPHREYS
                                         APRIL 22, 2003
COMMONWEALTH OF VIRGINIA


                  UPON A HEARING EN BANC

         FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                Charles D. Griffith, Jr., Judge

         Daniel Miller (Dan Miller & Associates, P.C.,
         on briefs), for appellant.

         Robert H. Anderson, III, Senior Assistant
         Attorney General (Jerry W. Kilgore, Attorney
         General, on brief), for appellee.


     This matter comes before the Court on a hearing en banc,

pursuant to the Court's own motion under Code § 17.1-402(D), and

corresponding order of January 8, 2003, ordering that this case

proceed directly to an en banc hearing.  Upon hearing this matter

en banc, we unanimously reverse the judgment of the trial court

and remand.

_____
     * Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

## I.  Background

Following proceedings in the juvenile court, a grand jury indicted Kenneth Jackson, a juvenile, for possession of cocaine with intent to distribute on school property and possession of cocaine with intent to distribute.  On October 10, 1997 Jackson tendered a guilty plea in the circuit court to those charges.  A judge accepted the plea and entered a conviction order.  In December of 1997, the circuit court judge who convicted Jackson issued a capias at the Commonwealth's request, ordering Jackson to appear and show cause why his bail should not be terminated.  The record does not indicate the disposition of that matter.  In February 1998, the circuit court judge sentenced Jackson on his guilty plea to twenty years in prison, suspended eighteen years of the sentence, and ordered probation upon Jackson's release.  Both the conviction order and the sentencing order indicate that the "Commonwealth was represented in the case by Charles D. Griffith, Jr. [the Commonwealth's Attorney for the City of Norfolk], or his designee."  Several documents in the record suggest that Elizabeth S. Dopp, an Assistant Commonwealth's Attorney, actually represented the Commonwealth at various stages of the case.

In April and June 2001, the circuit judge who convicted and sentenced Jackson issued orders directing Jackson to show cause why his probation should not be revoked.  Charles D. Griffith, Jr., who had been appointed as a circuit court judge after Jackson's original sentencing, was assigned to Jackson's probation

-

revocation hearing.  Jackson objected to Judge Griffith presiding over the case.  He argued that, because Judge Griffith was the Commonwealth's Attorney under whom the original convictions were obtained, the Judicial Canons required Griffith to recuse himself.  Judge Griffith indicated he had obtained an advisory opinion from the Judicial Inquiry and Review Commission and needed to consider only whether he was the Commonwealth's Attorney when the probation violation occurred, not whether he was the Commonwealth's Attorney at the time of the underlying conviction.  On that basis, Judge Griffith denied Jackson's motion for recusal.

At the conclusion of the evidence, Judge Griffith found that Jackson had violated conditions of his probation and ordered that the entire previously suspended sentence be executed.  Jackson appeals, arguing that Judge Griffith erred in refusing to grant Jackson's motion for recusal.

## II.  Analysis

We begin by recognizing, as Lord Hewart succinctly noted, that "Justice should not only be done, but should manifestly and undoubtedly be seen to be done."  Rex v. Sussex Justices, King's Bench Reports, 1924, vol. 1.  Accordingly, when a motion for recusal is raised, we have held that

> "[a] trial judge must exercise reasonable
> discretion to determine whether he possesses
> such a bias or prejudice as would deny a
> party a fair trial . . . ."  Stamper v.
> Commonwealth, 228 Va. 707, 714, 324 S.E.2d
> 682, 686 (1985) (citing Deahl v. Winchester
> Dep't. Social Services, 224 Va. 664, 672-73,

-

299 S.E.2d 863, 867 (1983)).  In exercising such discretion, a judge must not only consider his or her true state of impartiality, but also the public's perception of his or her fairness, so that public confidence in the integrity of the judicial system is maintained.  Id. However, "[m]erely because a trial judge is familiar with a party and his legal difficulties through prior judicial hearings . . . does not automatically or inferentially raise the issue of bias." Deahl, 224 Va. at 672-73, 299 S.E.2d at 867 (citing Barry v. Sigler, 373 F.2d 835, 836 (8th Cir. 1967)).  Furthermore, "[t]he courts are practically unanimous in the view that neither the forming or expressing of [an opinion upon a matter or issue which may come before him in a latter proceeding] disqualifies a judge in a subsequent matter."  Slayton v. Commonwealth, 185 Va. 371, 376, 38 S.E.2d 485, 488 (1946); see also Justus v. Commonwealth, 222 Va. 667, 674, 283 S.E.2d 905, 908 (1981), cert. denied, 455 U.S. 983 (1982).

Buchanan v. Buchanan, 14 Va. App. 53, 55-56, 415 S.E.2d 237, 238 (1992).  Thus, we have declined to adopt a per se rule declaring that trial judges who, as Commonwealth's Attorneys, previously have prosecuted an accused may not preside over the accused's trial on unrelated criminal charges at a later time.  Davis v. Commonwealth, 21 Va. App. 587, 592, 466 S.E.2d 741, 743 (1996). However, our jurisprudence has not adequately addressed the important consideration of maintaining the integrity of the judicial system, as it relates to the specific matter at issue here – a trial judge presiding over the trial of a matter in which he or she has previously acted as, or on behalf of, a party.

However, the Supreme Court of Virginia has addressed similar issues with respect to other elements of the judicial system.  Its holdings in this regard guide our decision here.

Specifically, in City of Va. Beach v. Giant Sq. Shopping, 255 Va. 467, 498 S.E.2d 917 (1998), the Supreme Court of Virginia determined that a trial court abused its discretion in refusing to strike for cause a commissioner in an eminent domain action, where it was established that at the time of trial, the commissioner was a client of the landowner's counsel and that the commissioner had used the landowner as an appraiser in a prior condemnation proceeding to which the commissioner was a party.[1]  255 Va. at 471, 498 S.E.2d at 919.  The court noted that the commissioner at issue "ha[d] moved from counsel table in the prior case to the commissioners' box in the present case to sit in judgment [over] his former hired appraiser," and held it was "extremely unlikely the public would have confidence in the integrity of the process when a commissioner [had] the identity of interests demonstrated by this prospective commissioner."  Id.  Our Supreme Court has expressed similar concerns with respect to the seating of an otherwise disinterested juror who was too closely related to a witness.  Barrett v. Commonwealth, 262 Va. 823, 826-27, 553 S.E.2d

---

[1] A commissioner is an individual who is impaneled as one of a group of five or nine "disinterested freeholders" to determine the issue of "just compensation" as it relates to condemnation proceedings, instituted pursuant to the power of eminent domain. See Code §§ 25-46.19 and -46.20.

-

731, 733 (2000).  We hold that the same rationale and attendant analyses with respect to "identit[ies] of interest[]" relating to prospective jurors or commissioners and parties, must, by their very nature, apply with equal force to those relating to judges and parties.

Here, the record establishes that Judge Griffith was the Commonwealth's Attorney for the City of Norfolk at the time of the underlying offense committed by Jackson, as well as at the time of Jackson's trial, resulting conviction, and sentencing for the offense.  Although it is possible that Judge Griffith had no knowledge of Jackson's case while he was Commonwealth's Attorney, and played no part in the charging decision or in framing the trial strategy, the record does not establish this to be the case.  Indeed, to assume that a Commonwealth's Attorney, who has the responsibility and duty to prosecute violations of the criminal law, is ignorant of the manner in which his subordinates manage and dispose of cases, which are by law, in his or her ultimate charge, is counterintuitive to the expectation the public has of the role of its elected chief prosecutor.

Further, the record establishes that the proceeding at issue, Jackson's probation revocation hearing, was "a continuation of the proceedings of [Jackson's] underlying criminal conviction," Grimsley v. Dodson, 696 F.2d 303, 305 (4th Cir. 1982); see also Merritt v. Commonwealth, 32 Va. App. 506, 509, 528 S.E.2d 743, 744 (2000) ("A probation violation is not itself a criminal

-

conviction.  It is, however, a continuation and part of the sentencing process imposed for a criminal conviction . . . .").  Thus, in this particular case, Judge Griffith served as both the accuser at the original trial, and the trier-of-fact in the continuation of the same proceeding.  See State of New Jersey v. Tucker, 625 A.2d 34 (1993); Jenkins v. State of Mississippi, 570 So.2d 1191 (1990).  The very functions involved in the performance of these two roles are, by definition, contradictory.  See Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972); see also Tumey v. Ohio, 273 U.S. 510, 523 (1927).  They are contradictory, because of the "identity of interests" involved.  Accordingly, this case falls squarely within our repeatedly expressed concerns with regard to matters affecting the integrity of the judicial process,[2] and thus, raises the issue of whether bias exists as a matter of law.

---

[2] Although a failure to adhere to the Canons of Judicial Conduct would not, in and of itself, constitute grounds for reversal of a judgment, we note that Canon 3(E)(1)(b) of the Canons of Judicial Conduct for the Commonwealth of Virginia (2000) provides that:

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> \*    \*    \*    \*    \*    \*    \*
>
> (b) The judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served

So viewed, and because Jackson specifically requested that Judge Griffith recuse himself, we find that Judge Griffith's failure to recuse himself under these circumstances "necessarily" resulted in a situation seriously undermining the integrity of our judicial system.  Therefore, we hold that Judge Griffith abused his judicial discretion as a matter of law, in refusing to recuse himself in this matter, where he acted initially on behalf of a party, and subsequently as the trial judge, in the same proceeding.[3]  Thus, we reverse the decision of the trial court and remand for a new hearing with direction that such hearing be held before another judge of the circuit.

<u>Reversed and remanded.</u>

---

    during such association as a lawyer
    concerning the matter, or the judge has been
    a material witness concerning it; . . . .

[3] Because we find that, under the peculiar facts of this case, there was an abuse of discretion as a matter of law, we do not address Jackson's additional argument that Judge Griffith's failure demonstrated a reasonable appearance of impropriety sufficient to establish a violation of Jackson's constitutional right to due process of law.  Nor do we find it necessary to reach the appropriate application of our decision in <u>Welsh v. Commonwealth</u>, 14 Va. App. 300, 317, 416 S.E.2d 451, 461 (1992), as it relates to this issue.