COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner


JOSEPH MICHAEL RUSSELL

v.      Record No. 1469-05-4

NANCY LYNNE RUSSELL

JOSEPH MICHAEL RUSSELL

v.      Record No. 2247-05-4

NANCY LYNNE RUSSELL                         MEMORANDUM OPINION*
                                                    PER CURIAM
JOSEPH MICHAEL RUSSELL                          OCTOBER 3, 2006

v.      Record No. 2585-05-4

NANCY LYNNE RUSSELL

JOSEPH MICHAEL RUSSELL

v.      Record No. 3151-05-4

NANCY LYNNE RUSSELL

JOSEPH MICHAEL RUSSELL

v.      Record No. 0204-06-4

NANCY LYNNE RUSSELL

JOSEPH MICHAEL RUSSELL

v.      Record No. 1107-06-4

NANCY LYNNE RUSSELL


* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge
Jane Marum Roush, Judge

(Fred M. Rejali, on briefs), for appellant.

(William B. Reichhardt; Colleen C. Sweeney; William B.
Reichhardt & Associates, on briefs), for appellee.

Joseph Michael Russell (father) has filed six appeals arising from custody, visitation, and contempt issues concerning his relationship with Nancy Lynne Russell (mother) and their minor son, Benjamin.  Father presents numerous questions on appeal, which will be addressed within the body of this opinion.  Both parties request attorney's fees on appeal.  Upon reviewing the records and briefs of the parties, we conclude that these appeals are without merit.  Accordingly, we summarily affirm the decisions of the trial court.  Rule 5A:27.

## BACKGROUND

The parties married in September 1991.  The couple's final separation occurred in December 1992.  On May 27, 1993, Benjamin, their only child, was born.  Their divorce was finalized in 1995.

The parties had informally agreed to a number of visitation arrangements since their separation.  When the child was five years old, father and mother were living in separate houses but were within walking distance of each other, and the two agreed to split their time with him during the week; this arrangement was finalized in a 2001 consent order.  In an effort to obtain sole custody of the child, mother filed a petition to reopen and modify custody and child support in 2003.  The trial court appointed a guardian *ad litem* (GAL) to represent the child's interests.

The parties agreed to a modified custody order on December 24, 2003.  The order decreed that the parties would attend counseling sessions with Dr. Victor Elion, that the parties would make decisions concerning Benjamin together, and that "[i]f the parties cannot reach an

agreement as to activities, they shall submit the issue to Dr. Elion or other therapist, who shall make the decision." The order also stated that Dr. Elion would draft a report on the progress of the family counseling for the court to review.

Dr. Elion delivered a written report to the GAL, who asked him to draft a second report. On August 27, 2004, Dr. Elion filed the second report. One of the report's recommendations was that the court reconsider mother's petition for modification of custody. The trial court held a hearing in December 2004 to review Dr. Elion's appraisal of the situation. During that hearing, the trial court ordered that a hearing for visitation and custody be held on May 2 and 3, 2005. After the May 2005 hearing, at which Dr. Elion testified, the court entered a custody order on May 20, 2005, granting sole custody of the child to the mother.

Subsequently, mother filed a motion asking the trial court to require father to show cause why he should not be held in contempt for violating the May 20, 2005 custody order. The trial court determined, in a hearing pursuant to this motion on November 29, 2005, that father had violated the custody agreement on numerous occasions. The trial court found father had interfered with mother's visitation rights during weeknights, during Thanksgiving break, had supplied the child with locks to lock himself in his room in mother's house, and used the child to communicate with mother on visitation issues. The trial court found father in contempt of court, but suspended the jail sentence on certain conditions.

A December 9, 2005 order, entered pursuant to a show cause hearing initiated by mother, provided that mother shall have exclusive custody of Benjamin until January 2, 2006. Mother testified at a January 20, 2006 hearing that on December 17, 2005, father drove by and picked up Benjamin in father's vehicle while Benjamin was playing in a neighbor's yard. On January 23, 2006, the trial court entered an order finding father in contempt, and incarcerated him until he "submits a written plan as to how he will comply with this court's orders and obtain assistance

- 3 -

by a mental health professional." Father failed to comply with the trial court's order; his counsel argued that doing so could compromise his due process rights.

After a March 21, 2006 hearing, the trial court issued an order stating that, "Michael Russell shall be released from jail. Pending Michael Russell's submission to the court of a plan to follow the Court's Order all visitation shall be suspended. Michael Russell shall have no contact with Benjamin." Within hours of being released, father called Benjamin on the telephone. In a March 31, 2006 hearing, the court refused to grant father visitation, saying "I think it's clear at this time in Ben's life contact with his father would be toxic."

ANALYSIS[1]

Record No. 1469-05-4, Questions Presented I and II

Scheduling of Custody Hearing of May 2-3, 2005

Father contends there was no legal basis for Dr. Elion to suggest a custody modification and that the trial court erred in scheduling the May 2-3, 2005 custody hearing when a final order had been entered in the matter on December 24, 2003 and no petition had been filed for a change in custody. Father also contends the trial court erred in allowing Dr. Elion to testify and in considering his testimony when he had not prepared a custody evaluation.

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 328, 328, 387 S.E.2d 794, 795 (1990). Specifically, Code § 20-107.2 provides that "[u]pon entry of a decree providing . . . for a divorce . . . the court may make such further decree

---

[1] Father has filed a "Motion for an Expedited Hearing, and Request for Attorney's Fees," arguing that his appeals are "extremely compelling" and that mother is "maliciously prosecuting him." We deny this motion because we find father's appeals to be without merit. Father has also filed a "Motion to Declare Orders Void or to Stay Orders Pending Appeal," arguing that the trial court had no jurisdiction to issue various orders. We deny this motion for reasons provided in the analysis section.

- 4 -

as it shall deem expedient concerning the custody or visitation and support of the minor children of the parties."  Code § 20-108 states:

> The court may, from time to time after decreeing as provided in § 20-107.2 . . . on its own motion . . . revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

"The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation when subsequent events render such action appropriate for the child's welfare." Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986).

In this case, Dr. Elion's recommendation to modify custody provided the court with a sufficient basis to hold a custody hearing.  Furthermore, the trial court was within its discretion to revise an existing custody agreement based in part on Dr. Elion's report and testimony.  Dr. Elion is an expert clinical psychologist who met with the parents and the child numerous times. He found mother to be responsive during the sessions, and observed that father was unresponsive and uncooperative.  He described the parties' relationship as a "case where there is, in terms of harmonious communication or effective communication that would be in the best interest of the child, as being virtually non-existent."  One example Dr. Elion provided was that father was unresponsive to any suggestion that the child's athletic activities should be reduced despite the fact that these activities "took away time from other important aspects of childrearing experiences."  The trial court, acting in the best interests of the child, was free to hold a hearing and modify custody based in part on Dr. Elion's informed opinion.

Record No. 1469-05-4, Questions Presented III and IV

Subpoenas

Father contends the trial court erred when it allowed mother to present evidence by Dr. Elion when the doctor had not provided to father's counsel the first report he drafted or the notes

from his sessions with Benjamin to father's counsel despite having been subpoenaed for these documents.

In November 2004, both parties served Dr. Elion with a subpoena *duces tecum* and a subpoena for a witness, requesting access to the child's medical records. In a November 12, 2004 motion, the GAL stated that the subpoenas *duces tecum* should be denied on the basis that releasing the records was not in the child's best interests, as Dr. Elion explicitly told the child he would not release this information to his parents.

A subsequent order from the trial court provided that "none of Benjamin's psychological records are discoverable."

> "The trial court's decision, when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." "Certainly it is true that the legal rights of the parent should be respected . . . but the welfare of the child is to be regarded more highly than the technical legal rights of the parent."

Green v. Richmond Dep't of Soc. Servs., 35 Va. App. 682, 686-87, 547 S.E.2d 548, 550 (2001) (quoting L.C.S. v. S.A.S., 19 Va. App. 709, 724, 453 S.E.2d 580, 588 (1995) (citations omitted)).

Both Dr. Elion and the GAL believed allowing the parents access to Benjamin's medical documents could interfere with his counseling. The trial court was well within its discretion, then, in ruling these records to be undiscoverable in order to protect the welfare of the child.

Record No. 1469-05-4, Questions Presented V and VI

Admissibility of Expert Testimony

Father contends the trial court erred in admitting Dr. Elion's report and giving substantial weight to his testimony when he had been instructed only to report on the status of family therapy. Father also contends the trial court erred in admitting Dr. Elion's report when it contained gross misstatements.

The December 24, 2003 consent order states that "this Order and the efficacy of the family counseling will be reviewed by Dr. Elion . . . within five months from the entry of this Order. A report regarding the efficacy and progress of family counseling shall be prepared for review by the Court and the Guardian *ad litem*." Father argues that Dr. Elion's report and testimony went beyond the limited scope assigned to him by the consent order and that the report misstated the number and intensity of athletic activities Benjamin was involved in and erroneously stated that father had punched Benjamin in the chest.

As the trial court noted at the time, even if true, father's arguments merely go to the weight accorded Dr. Elion's report and testimony. "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Joynes v. Payne, 36 Va. App. 401, 416, 551 S.E.2d 10, 17 (2001).

The trial court did not abuse its discretion by weighing Dr. Elion's evidence as it did and in granting sole custody to mother.

Record No. 1469-05-4, Question Presented VII

Admissibility of Father's Deposition Transcript

Father contends the trial court erred in admitting the entire transcript of his April 2005 deposition into evidence, arguing that the deposition transcript contained hearsay and was prejudicial to father.

"[A] party may, subject to the rules of evidence, introduce an adverse party's discovery deposition as substantive evidence in his own case, whether the deponent is present or not." Horne v. Milgrim, 226 Va. 133, 138, 306 S.E.2d 893, 895 (1983).

> The party offering such a deposition may tender only that part of it he considers relevant. If fairness requires the admission of additional parts, a remedy is provided by Rule 4:7(a)(5). The deposition is, of course, subject to objection on the grounds of authenticity, relevancy, non-compliance with the Rules of Court, or any failure to comport with the rules of evidence.

Id.

Father asserts that the deposition transcript contains irrelevant content and hearsay. He does not, however, specify which sections of the transcript are objectionable. The deposition transcript consists mainly of father's answers to questions about Benjamin's extra-curricular activities, his relationship to Benjamin and mother, and his participation in family therapy. None of these subjects is irrelevant to the issue of custody. In the absence of specific examples of hearsay or irrelevance, then, this Court cannot conclude the trial court erred in admitting the deposition into evidence.

Record No. 1469-05-4, Question Presented VIII

Judicial Bias

On April 29, 2005, Judge Keith presided over a hearing and issued an order in a separate case in which father was a party. Judge Keith's order involved Benjamin's mental health records, and stated in part that these records were not to be communicated to father. Based on this ruling, father contends the trial court had already formed an opinion as to the admissibility of the child's mental health records and that the judge abused his discretion by relying on opinions formed in this previous case when he granted mother sole custody.

The fact that Judge Keith had presided over a hearing in which father was a party that concerned Benjamin's mental health records does not, by itself, constitute an abuse of discretion on his part. "'Merely because a trial judge is familiar with a party and his legal difficulties through prior judicial hearings . . . does not automatically or inferentially raise the issue of

- 8 -

bias.'" Deahl v. Winchester Dep't of Soc. Servs., 224 Va. 664, 672-73, 229 S.E.2d 863, 867

(1983) (quoting Barry v. Sigler, 373 F.2d 835, 836 (8th Cir. 1967)).

> "Frequently, in the disposition of cases, both civil and criminal, a judge is called upon to form and express an opinion upon a matter or issue which may come before him in a subsequent proceeding arising out of the same state of facts. The courts are practically unanimous in the view that neither the forming nor the expression of such a conclusion, under such circumstances, disqualifies a judge in the subsequent matter. [Citations omitted.]"

Justus v. Commonwealth, 222 Va. 667, 673, 283 S.E.2d 905, 908 (1981) (quoting Slayton v.

Commonwealth, 185 Va. 371, 376, 38 S.E.2d 485, 488 (1946)).

Father alleges nothing more than that Judge Keith previously issued a ruling involving

the admissibility and disclosure of Benjamin's mental health records similar to the one he issued

in May of 2005; this fact alone is insufficient to show Judge Keith abused his discretion.

Record No. 1469-05-4, Question Presented IX

Sufficiency Of The Evidence

Father contends the trial court should have given Dr. Elion's report almost no weight and

there was little evidence besides the report to support granting mother sole custody of the child.

"The trial court's decision, when based upon an *ore tenus* hearing, is entitled to great

weight and will not be disturbed unless plainly wrong or without evidence to support it."

Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986). Dr. Elion is a clinical

psychologist whom both parents designated to evaluate themselves and their son. He conducted

numerous clinical sessions with the parents and with the child. The trial judge did not abuse his

discretion in relying heavily on Dr. Elion's testimony. The record shows the trial judge

explained his decision-making process in detail, and discussed the factors listed in Code

§ 20-124.3 when deciding the best interests of the child. The trial judge relied on many pieces of

evidence in coming to his decision, including testimony from the parties and e-mails the parents

had written concerning Benjamin. The evidence was sufficient to support the trial court's decision.

Record No. 2247-05-4

Jurisdiction

On August 19, 2005, the trial court issued an order stating that the non-custodial parent is restricted from visiting with Benjamin during the other parent's half of the summer with him. Mother contends this order merely clarified a May 20, 2005 order. Father argues the order modified the May 20 order and that, because the May 20 order was on appeal at the time, the trial court no longer had jurisdiction. Therefore, father argues, the August 19 order is void.

Provision E of the May 20, 2005 order states as follows:

> The Father shall have visitation for the first half of summer break
> in 2005 and the Mother shall have the second half. Father and
> Mother shall alternate their respective halves each year thereafter.
> Each of the parties shall have regular visitation as described herein
> for the Father during the other parent's one-half summer visitation
> time. However, upon prior notice of dates exchanged no later than
> May 1 of each year, each parent shall be entitled to exclusive
> visitation during their summer visitation for vacation and travel
> with their son.

The provision is unclear. The first sentence states that the child will stay with one parent for the first half of the summer, and the other parent for the second half. The third sentence, though, provides that each parent "shall have regular visitation as described herein for the Father during the other parent's one-half summer visitation time." The third sentence arguably contradicts the first, leaving undefined and unclear the meaning of "regular visitation as described herein for the Father."

The trial judge, during the May 3, 2005 hearing, stated that he simply intended to split the summer "down the middle. And in 2005, the father will get the first half. The mother will get the second half." Then, during the August 17, 2005 hearing, the trial judge stated that he viewed

- 10 -

the ensuing August 19, 2005 order as a clarification: "I certainly think I have the power to clarify that today." He also stated:

> The [May 20, 2005] order that was—it's inconsistent. Each of the parties are [sic] to have regular visitation during the other party's one-half summer vacation time. That wasn't my order. That's not what I intended at all. It was supposed to be . . . . One half is all dad's; one half is all mom's, and there's no visitation for the other parent during that time.

Because the May 20, 2005 order contained inconsistent and unclear statements, the August 19, 2005 order was a clarification, not a modification, of the original order. As such, the trial court had the authority to enter the August 19, 2005 order.

Record No. 2585-05-4

Inconsistent Ruling of September 23, 2005 Order

Father filed a motion to unseal the file in this case. The trial court entered an order on September 23, 2005, stating "[Father's] motion is denied because the Court lacks jurisdiction to enter the order while the matter is on appeal. Furthermore, no compelling reason was presented by the defendant that the file should not be sealed."

Father contends the court erred in ruling that the court lacked jurisdiction over the matter and then also ruling that no compelling reason was presented to unseal the file. If a court lacks jurisdiction over a case, it must dismiss. The sentence in the order addressing the fact that no compelling reason was presented by the defendant is merely dicta. See Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 383, 601 S.E.2d 648, 651 (2004) (An "alternative justification for the ruling was unnecessary to the holding. As such, it is dicta."). We therefore find no reversible error in the order.

- 11 -

Contempt Orders

Jurisdiction

Father contends the November 29, 2005 order, suspending a jail sentence, and the January 23, 2006 order, imposing a jail sentence, were modifications of the May 20, 2005 order, which was on appeal at that time, and, as such, the trial court lacked jurisdiction to enter those orders.

We do not accept the premise of father's argument. Under Code § 20-124.2(E), the trial court has the "continuing authority and jurisdiction to make any additional orders" which are necessary to enforce a custody order it has previously issued. The November 29, 2005 and January 23, 2006 orders were not entered to modify the May 20, 2005 order; instead, the court entered them to enforce the May 20, 2005 order because of father's failure to comply. Code § 20-124.2(E) gives the court the authority to do so.

Service of Process

Father also argues that procedural defects invalidate the November 29, 2005 order. Specifically, he claims lack of service of process for the January 20, 2006 hearing. However, father presents no arguments, case law, or statutes to support his contention. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not search the record for errors in order to interpret appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

Sufficiency

Father also argues that the evidence was insufficient to find him in contempt.

> A trial court "has the authority to hold [an] offending party in
> contempt for acting in bad faith or for willful disobedience of its

- 12 -

order." Carswell v. Matterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982). In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court. Frazier v. Commonwealth, 3 Va. App. 84, 87, 348 S.E.2d 405, 407 (1986). The offending party then has the burden of proving justification for his or her failure to comply. Id.

Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991).

At the November 29, 2005 hearing, father admitted communicating with mother through the child and picking up the child from school on Thanksgiving break. These actions were clear violations of the court's May 20, 2005 order and, therefore, were sufficient to find father in contempt.

The December 9, 2005 order provided that "[t]he mother shall have exclusive custodial time during the Winter/Christmas visitation time of 2005" and "[a]fter January 2, 2006 the father shall resume every other weekend visitation from 4:00 p.m. Friday to 7:30 p.m. Sunday." During the January 20, 2006 hearing, mother testified that on December 17, 2005, without prior notice, father took the child while he was playing in his friend's yard and kept him for the weekend. This action was a direct violation of the December 9, 2005 order. The trial court was within its discretion to find father "clearly in contempt of this court's orders."

Father also claims the trial judge found father in contempt not based on the violations alleged in mother's show cause motions, but based on father's own testimony during the hearings. This is untrue, as the contempt order was the result of a combination of the facts alleged in mother's show cause motions and her testimony, and in father's own testimony.

Record No. 1107-06-4, Questions Presented I and II

Modification of Visitation Orders

Father argues the trial court erred in modifying visitation orders while the issue of visitation was on appeal. We have addressed this issue in the section entitled "Record No. 1469-05-4, Questions Presented I and II."

- 13 -

Void Orders

Father argues the trial court erred in finding him in contempt of court for violating orders that were void. The modification of the visitation orders was not void, though, as we have already explained in "Record No. 1469-05-4, Questions Presented I and II."

Record No. 1107-06-4, Question Presented V

Conditions of Contempt

Father argues the trial court erred in finding that he had not met the conditions of the contempt order. He presents no arguments and cites no law in support of this contention. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not search the record for errors in order to interpret appellant's contention and correct deficiencies in a brief." Buchanan, 14 Va. App. at 56, 415 S.E.2d at 239.

Record No. 1107-06-4, Questions Presented VI

Contempt Finding

Father contends that the trial court erred in finding him in contempt and ordering him to submit a written plan as to how he will comply with the court's orders when father had already submitted such a plan as part of a January 3, 2006 motion. Father also argues the court erred in continuing to find father in contempt after his counsel explained that he did not want to submit another plan for how to comply with the court's orders because he was concerned such a plan would violate his due process rights and harm his ability to appeal.

The trial court set out clear conditions for father's release from incarceration, instructing him to submit a written plan as to how he would obey the court's orders. Father refused to do so. The "plan" he submitted on January 3, 2006 included a provision that Benjamin could visit father as often as he likes, as long as Benjamin is returned to mother's house by 5:30 p.m. This

- 14 -

provision was a right the December 9, 2005 order did not grant father.  In addition, father continuously disobeyed the court's orders, from picking up Benjamin when the court order forbade it in December of 2005, to refusing to submit a plan as to how he would comply with the court's orders, to telephoning Benjamin within hours of being released from incarceration.  The trial court did not err, therefore, in finding father in contempt, in incarcerating him, or in refusing to grant him visitation with Benjamin.

Attorney Fees

Both parties have requested that this Court award costs and attorney's fees for matters related to these appeals.  Because father's appeals were clearly without merit, we deny his request and we award costs and attorney's fees to mother.  We remand this case to the trial court for a determination of attorney's fees incurred in responding to these appeals.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

CONCLUSION

For the reasons stated, we summarily affirm the decisions of the trial court.  Rule 5A:27. We remand to the trial court for a determination of the attorney's fees incurred by mother in these appeals.

Affirmed and remanded.