COURT OF APPEALS OF VIRGINIA


Present:    Judges Haley, Millette and Senior Judge Coleman


TAUNYA CHAPPELL

                                                      MEMORANDUM OPINION[*]
v.      Record No. 2663-07-4                               PER CURIAM
                                                           JUNE 3, 2008
ALEXANDRIA DEPARTMENT
  OF HUMAN SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              John E. Kloch, Judge

                (George P. Doss, Jr., on brief), for appellant.  Appellant submitting
                on brief.

                (Mary Elliott O'Donnell; Ignacio Pessoa; Office of the City
                Attorney, on brief), for appellee.  Appellee submitting on brief.

                (Gwena Kay Tibbits, on brief), Guardian *ad litem* for the minor
                children.  Guardian *ad litem* submitting on brief.


        Taunya Chappell (mother) appeals a decision of the trial court terminating her residual

parental rights to her four minor children, L.C., K.C., A.A., and Ky.C., pursuant to Code

§ 16.1-283(C)(2).  Mother contends the trial court erred in (1) admitting into evidence Alexandria

Department of Human Services' ("ADHS") Exhibit #20 - - copies of the four Alexandria Juvenile

and Domestic Relations District Court's ("J & DR court") Orders for Involuntary Termination of

Residual Parental Rights of mother; and (2) finding clear and convincing evidence to support

termination of her residual parental rights to her four minor children under Code § 16.1-283(C)(2),

by considering them as a group, rather than considering the best interests of each child individually.

Finding no error, we affirm the trial court's decision.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

Mother argues that upon her appeal from the J & DR court, its orders terminating her residual parental rights to L.C., K.C., A.A., and Ky.C. were annulled, and a trial *de novo* ensued in the trial court, as if the previous orders never existed.[1]  Mother argues, therefore, that the trial court erred in admitting the J & DR court's termination orders "'as evidence to consider whether the procedural history of the case, the fact that they made a finding consistent with the code,'" and thereby denied her a trial *de novo*.  Mother contends the trial judge knew the history of the case because it was before him on appeal and, therefore, had no reason to admit the J & DR court's termination orders.  Mother further argues the trial court's admission of Exhibit 20 denied her right to due process of law and effectively shifted the burden of going forward with evidence from ADHS to mother and, therefore, did not constitute harmless error.  We disagree.[2]

> [A]n appeal from the juvenile court must be heard *de novo* by the circuit court.  Code § 16.1-136.  "'A *de novo* hearing means a *trial anew*, with the burden of proof remaining upon the party with whom it rested in the juvenile court.'"  A trial *de novo* in the circuit court "annuls the judgment of the [juvenile court] as completely as if there had been no previous trial . . . and . . . grants to a litigant every advantage which would have been [available to the litigant] had the case been tried originally in [the circuit] court."  "'A court which hears a case *de novo*, which disregards the judgment of the court below, which hears evidence anew and new evidence, and which makes final disposition of the case, acts not as a court of appeals but as one exercising original jurisdiction.'"

---

[1] Mother refers to those orders as Exhibit 20.  However, our review of the record shows the orders were admitted as Exhibits 20A, 20B, 20C, and 20D, one for each minor child.  For purposes of this opinion, we will refer to them collectively as Exhibit 20.

[2] We do not consider mother's argument with respect to the trial court's admission of Exhibit 21 - - the J & DR court orders terminating Josiah Beatty's residual parental rights to L.C., A.A., and Ky.C. - - because mother specifically limited her first question presented to the trial court's admission of Exhibit 20.  See Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (declined to consider "an issue not expressly stated among the 'questions presented'").

<u>Fairfax County Dep't of Family Servs. v. D.N.</u>, 29 Va. App. 400, 406, 512 S.E.2d 830, 832-33 (1999) (citations omitted).  The admissibility of evidence rests in the sound discretion of the trial court.  <u>Breeden v. Commonwealth</u>, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004).

The record belies mother's assertion that the trial court did not afford her a trial *de novo* and shifted the burden of going forward with evidence to her as a result of its admission of Exhibit 20. To the contrary, the record clearly shows that the trial court admitted Exhibit 20, but limited its "use to show the procedural history of the case, not the substantive history . . . ."  The trial court assured the parties that it would not "take into consideration the findings of the Lower Court, but only the procedural history, the fact that they made a finding consistent with the code."  The trial judge conducted a *de novo* trial, over the course of three days, which included testimony from twelve witnesses and the admission of numerous exhibits.

Had this been a jury trial, mother's argument might be persuasive.  However, this was a bench trial.  The evidence was admissible and received only to show the procedural history of the case not for its substantive value.  In the absence of proof to the contrary, we presume that the trial judge received and considered the evidence only for the purpose for which it was tendered and received.  A trial judge is presumed to apply the law correctly and to consider evidence within its proper context.  <u>See</u> <u>Mason v. Commonwealth</u>, 219 Va. 1091, 1098, 254 S.E.2d 116, 120 (1979); <u>Yarborough v. Commonwealth</u>, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

Accordingly, based on this record, we find no abuse of discretion in the trial court's admission of Exhibit 20.

## II.

The crux of mother's argument is that ADHS failed to put forward clear and convincing evidence to support the termination of her residual parental rights under Code § 16.1-283(C)(2) with

respect to each individual child, L.C., K.C., A.A., and Ky.C., rather than with respect to them as a group. Mother contends the statute speaks to "a child" in the singular, yet ADHS presented its case with respect to her four minor children as a group. She, therefore, asserts that the trial court erred by failing to determine whether she could effectively parent a fewer number of the children at issue in this case, plus two other children, N.C. and S.C., who were residing with her. She contends the trial court, by terminating her residual parental rights as to all four children, effectively shifted the clear and convincing burden to her to prove she could effectively parent one or more of the four children for which ADHS sought termination.

Mother also argues ADHS failed to provide her reasonable and appropriate services as required by Code § 16.1-283(C)(2), because it breached its plan to reintroduce and return her children two at a time, shortly after the release of Dr. Christopher Bishop's psychological testing of mother, so as to allow her to demonstrate her ability to properly parent all of her children. She contends Dr. Bishop, who evaluated her approximately one year prior to the trial court's termination hearing, evaluated her ability to parent all six of her children, but that he offered no opinion as to whether she could effectively parent fewer than six children. Finally, she asserts her evidence showed she had adequate housing to accommodate all six of her children and adequate income to support her entire family.

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). Furthermore,

> "[i]n matters of a child's welfare, trial courts are vested with broad
> discretion in making the decisions necessary to guard and to foster
> a child's best interests." The trial court's judgment, "when based
> on evidence heard *ore tenus*, will not be disturbed on appeal unless
> plainly wrong or without evidence to support it."

Id. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795

(1990); Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).  Recognizing that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action,'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)), we, nevertheless, "'presume[] [the trial court has] thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley, 9 Va. App. at 329, 387 S.E.2d at 796).

Code § 16.1-283 provides for the termination of residual parental rights under carefully defined circumstances.  Here, the trial court concluded that the evidence warranted termination of mother's residual parental rights to K.C., L.C., A.A., and Ky.C. under subsection (C)(2) of Code § 16.1-283.

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence that (1) the termination is in the best interests of the child, (2) "reasonable and appropriate" services have been offered to help the parent "remedy substantially the conditions which led to or required continuation of the child's foster care placement," and (3) despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care."  In addition, "[t]he court shall take into consideration the prior efforts of such [agency] to rehabilitate the parent . . . prior to the placement of the child in foster care." Id.

In determining what is in the child's best interests, a court must evaluate and consider many factors, including the child's age and physical and mental condition, the parent's age and physical and mental condition, the relationship between the child and parent, the child's needs,

and the role the parent has and will play in the child's upbringing. <u>Barkey v. Commonwealth, Alexandria Dep't of Human Servs.</u>, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." <u>L.G. v. Amherst County Dep't of Soc. Servs.</u>, 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003).

> The legislation established a reasonably presumptive time frame of twelve months for parents to receive rehabilitative services to enable them to correct the conditions that led to foster care placement . . . . If the parent fails to substantially remedy those conditions within twelve months the court may act to prevent the child from lingering in foster care.

<u>Id.</u> at 57, 581 S.E.2d at 889.

Here, the record contains credible evidence to support the trial court's finding that termination of mother's residual parental rights is in the best interests of each of her four minor children, L.C., K.C., A.A., and Ky.C. and that the requirements of Code § 16.1-283(C)(2) have been proven.

Mother's parental rights were terminated because of her lack of substantial progress over a reasonable period of time, not to exceed twelve months, in remedying the circumstances that led to the removal of L.C., K.C., A.A., and Ky.C. from her care, that is, her inability to "effectively care for her children, including not providing adequate housing or adequate income," which placed them at risk of being abused and neglected. The evidence proved that additional time would not remedy mother's level of functioning as a parent nor her inability to ensure the health, safety, and well-being of the four children.

At the time of the October 2007 termination hearing in the trial court, over two and one-half years had passed since the J & DR court approved foster care service plans for L.C., K.C., A.A., and Ky.C. At that time, mother was still either unable or unwilling to provide stable

housing for her children. She testified that she did not have adequate income to continue living in her current subsidized housing, which lease was due to expire in October 2007 and where she had to pay rent of $350 per month plus utilities. She indicated that she planned to move from that location, but she had not provided ADHS with a new address. She claimed in her testimony that she had located a new residence in Springfield, Virginia. However, she acknowledged it had three bedrooms. She stated that she would put L.C., KC., S.C., and N.C. in a bedroom with another child, despite a therapist's recommendation that L.C. not sleep in the same bedroom as K.C. or with any another child due to prior sexual abuse between L.C. and K.C. and despite mother having signed a safety contract prohibiting N.C. and S.C. from sleeping together or with any other children. Mother was working only six hours per week at the rate of eight dollars per hour. Despite intensive home services, counseling and psychological evaluations of mother revealed serious impediments existed to her ability to parent L.C., K.C., A.A., and Ky.C. The trial court heard extensive testimony from ADHS personnel, the children's foster parents, a therapist, and psychologists, which revealed the special needs and circumstances of each child, and mother's inability to effectively parent them independently without substantial and ongoing assistance.

Mother married Josiah Beatty, a convicted felon and the father of L.C., A.A., and Ky.C., as well as two other children with another woman, in February 2007. He was unemployed in October 2007, just as he had been in October 2004, when ADHS first became involved with the family. Dr. William Ling, who performed a Parent-Child Assessment on August 30, 2007, opined that Beatty and mother still needed to resolve how to coordinate their parenting responsibilities, to learn how to provide a consistent, organized structure for the family, and learn how to articulate clear expectations for the children. Dr. Ling expressed concerns about Beatty's ability to be consistent and supportive of mother and the children and his history of failing to

maintain employment on a consistent basis. Dr. Ling opined that the lack of organization and structure in the parenting displayed by mother and Beatty creates a risk of neglect and continued or increased inappropriate sexual behaviors between the children.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Clear and convincing evidence proved that mother had failed, without good cause, within a reasonable time not to exceed twelve months from when L.C., K.C., A.A., and Ky.C. were placed in foster care, to substantially remedy the conditions which led to their removal from her care and that the termination of mother's residual parental rights as to each of those four children was in their best interests.

Nothing in the record suggests that ADHS did not provide mother with reasonable and appropriate services to assist her in reunifying with her children or that continued services would alleviate her deficits. The testimony before the trial court was to the contrary and showed that ADHS had assisted mother for close to three years by providing financial assistance to pay for her past due gas bill, clothing, food, and daycare; individual counseling for mother and several of the children; intensive home-based services to address parenting, nutrition, and budgeting issues; payment for mother to live at the ALIVE shelter with A.A. and Ky.C. for a trial period until mother was evicted; extensive advocacy to assist mother in obtaining a Section 8 housing voucher; and psychological evaluations of mother and Beatty to determine the most effective way to assist mother and her children. Yet, clear and convincing evidence established that mother had not progressed to the point where she possessed appropriate parenting skills to address the needs of each specific child or that she would be able to provide them a safe, stable home environment, as a group or individually. See Jenkins v. Winchester Dep't of Soc. Servs.,

- 8 -

12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991) (finding that, despite the efforts made by the mother to meet the goals set out by the foster care plan, the mother "had not progressed to a point where she was capable of functioning as an independent parent").  Moreover, all four children were doing well in their current placements.

Accordingly, we cannot say the trial court's decision terminating mother's residual parental rights to L.C., K.C., A.A., and Ky.C. under Code § 16.1-283(C)(2) was plainly wrong or without evidence to support it.

Affirmed.