COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

PUBLISHED

RYAN ONEAL DAVIS

v.        Record No. 1193-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
OCTOBER 8, 2019

FROM THE CIRCUIT COURT OF SUSSEX COUNTY
Robert G. O'Hara, Jr., Judge Designate

Jessica V. Bailey (Jessica B. Mauger, Attorney at Law, on brief),
for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General; John I. Jones, IV, Assistant Attorney General,
on brief), for appellee.


Ryan Oneal Davis ("appellant") appeals the revocation of the suspension of his sentences by the Circuit Court of Sussex County ("trial court"). In 1995, appellant was convicted of malicious wounding and robbery. The trial court sentenced him to consecutive terms of twenty years' imprisonment on each charge, but suspended fourteen years on each charge. In 2006, appellant committed a murder. He was tried in 2008 and convicted, but that conviction was later overturned in a federal habeas corpus proceeding for ineffective assistance of counsel. See generally Davis v. Mathena, No. 2:12cv92 (E. D. Va. Mar. 27, 2014). In 2017, appellant was retried and convicted again. In 2018, after hearing evidence regarding appellant's conduct in the course of the murder and his conduct in prison since his original conviction, the trial court revoked the suspension of appellant's sentences and imposed the entirety of the twenty-eight years' imprisonment outstanding on appellant's 1995 robbery and malicious wounding convictions. Appellant raises four assignments of error:

1. The trial court erred in denying appellant's motion to recuse the trial judge when the judge's impartiality could reasonably be questioned because he also presided over the murder trial where the conduct used to justify the revocation was heard.

2. The trial court erred in refusing to dismiss the revocation proceedings when the circumstances justified a presumption that the proceedings were the result of prosecutorial vindictiveness.

3. The trial court erred in denying appellant's motion to dismiss the revocation related to the malicious wounding conviction because the revocation proceeding was instituted beyond the time constraints of Code § 19.2-306(B).

4. The trial court abused its discretion in revoking the entire suspended sentence because that resulted in an excessive sentence under the circumstances.

Appellant's first and fourth assignments of error are not supported with sufficient argument and authorities and therefore are waived. Appellant's second assignment of error fails because, even if the situation warranted a presumption of vindictiveness, a presumption of vindictiveness is rebuttable and appellant conceded the prosecutor was not actually vindictive. Appellant's third assignment of error is without merit because the trial court reasonably interpreted its original sentencing orders as suspending the sentences in the case for the maximum period permitted or allowed by law—appellant's life. Therefore, this Court affirms.

## I. BACKGROUND

"This Court considers 'the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'" Hawkins v. Commonwealth, 64 Va. App. 650, 652 (2015) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). So viewed the evidence is as follows:

In 1995, appellant was convicted of malicious wounding and robbery. On October 4, 1995, in two separate sentencing orders arising from the same case, the trial court sentenced appellant to twenty years' imprisonment on each of the two charges. Each sentencing order suspended fourteen years of each sentence "upon the condition that [appellant] keep the peace and be of good behavior for the maximum period required by law."

In 2006, appellant murdered Cherri Dowell. See generally Davis v. Commonwealth, No. 0615-17-2 (Va. Ct. App. July 17, 2018). Appellant was initially convicted of the murder in 2008. In 2014, the United States District Court for the Eastern District of Virginia granted appellant's petition for habeas corpus and ordered a new trial on the ground that appellant's attorney had been ineffective for failing to object to appellant being shackled while in the presence of the jury. Davis v. Mathena, No. 2:12cv92 (E. D. Va. Mar. 27, 2014).

In March of 2017, appellant was retried, by a jury, and again convicted of murder. Although he did not preside over appellant's first murder trial, Circuit Court Judge Designate Robert G. O'Hara, Jr. presided over the retrial. Furthermore, although Judge O'Hara did not recall it, he had also presided over appellant's initial trial and sentencing in 1995 for malicious wounding and robbery. Appellant filed his notice of appeal with the trial court in the murder case on April 13, 2017.[1] On April 7, 2017, however, before appellant appealed that case, the Commonwealth sent a letter to the trial court requesting the court initiate revocation proceedings based on the new conviction.

The Commonwealth filed a notice informing the court it intended to introduce evidence of appellant's conduct surrounding the murder, including several other unadjudicated crimes appellant allegedly committed at the time. Appellant then moved to recuse Judge O'Hara

---

[1] Appellant's conviction on the murder charge was affirmed by an unpublished opinion of this Court. Davis v. Commonwealth, Record No. 0615-17-2 (Va. Ct. App. July 17, 2018).

because the Commonwealth intended to present some of the same evidence it had presented at appellant's retrial over which Judge O'Hara had presided. Appellant argued that Judge O'Hara's familiarity with the evidence allowed his impartiality to reasonably be questioned. The trial court denied the motion. Judge O'Hara noted that the jury, not he, had been the finder of fact in appellant's murder trial. He stated:

> The Court has on occasion recused itself, but it generally likes to follow a script that we often do when we impanel a jury and ask myself some of those same questions we ask jurors. And in doing that, I did not find indication either from my memory or from the record that suggests that I should do so here.

He continued by noting that it was hardly uncommon for a judge to see the same defendant multiple times and that he had rarely found it necessary to recuse himself for that reason.

Appellant also moved to dismiss the revocation proceedings because he claimed it was a vindictive prosecution intended to "stifle" his "right to appeal" his murder conviction. He argued it did not matter if the prosecutor actually intended to retaliate for or deter an appeal, the appearance of vindictiveness sufficed to warrant dismissal. The prosecutor argued she had given no thought to appellant's appeal and only decided to seek revocation because of information revealed during the murder trial showing additional "bad behavior" on the part of appellant. Appellant then conceded that the prosecutor's motive was not vindictive:

> Judge, I would just reiterate, and I won't belabor the point, but I would just reiterate I absolutely believe Ms. Ramsey, that that was not her intent, but the court in Blackledge [v. Perry, 417 U.S. 21 (1974),] said that it doesn't matter what her intent is. What matters is the appearance of vindictiveness and the appearance that you're attempting to chill a defendant's right to an appeal, that you are attempting to dissuade them from an appeal for fear of getting more harsher [sic] or additional punishment as a result.

The trial court denied the motion.

On the day of the hearing, appellant moved to dismiss the revocation proceeding for the suspended sentence on the malicious wounding conviction. Appellant argued that the

- 4 -

proceeding was not instituted within the time limit required by Code § 19.2-306(B). He argued the malicious wounding conviction had a maximum potential penalty of twenty years' imprisonment and the revocation proceeding had not been initiated until more than one year after that twenty years had elapsed. The trial court took the motion under advisement and heard the evidence for revocation. After further briefing, the trial court denied the motion.

At the outset of the revocation hearing, the Commonwealth informed the Court it was not going to present the actual murder conviction, but would instead present the evidence of appellant's other unadjudicated criminal behavior. Appellant, for his part, conceded he was in violation of the good behavior requirement of the suspension of his sentences and explained the issue was the "appropriate sentence under the circumstances."

The Commonwealth presented appellant's prison records, the testimony of two law enforcement officers regarding their investigation of the murder and surrounding circumstances, particularly appellant's admissions to them, and the transcript of testimony from an earlier proceeding by appellant's cellmate. That evidence showed appellant committed numerous infractions in prison, including assault and multiple instances of threatening to kill or harm others. The evidence also showed appellant's admissions, to either law enforcement or his cellmate, that he broke into the victim's home on the night of the murder, stole her car, purchased and used drugs with money stolen from the victim that night, and initially lied to police during the investigation into the victim's death. The Commonwealth also introduced evidence that appellant had stolen nearly $2,000 from the victim a few months before the murder, for which he had been charged with grand larceny, although the charge was eventually *nolle prosequied*.

The trial court found appellant in violation of the conditions of the suspension of his sentences and revoked that suspension. The trial court imposed all twenty-eight years that had been suspended. This appeal followed.

## II. ANALYSIS

We begin by addressing the merits of appellant's third assignment of error. Appellant argues the trial court lacked authority to revoke the suspension of his sentence on the malicious wounding conviction because the proceedings were not initiated within one year of the "maximum period for which the defendant might originally have been sentenced to be incarcerated" on that charge. Thereafter we will take up appellant's second assignment of error in which he argues this Court should apply a presumption that the prosecutor was vindictive when seeking the revocation of the suspension of appellant's sentences. Since appellant failed to support his first and fourth assignments of error with authorities, this Court concludes he has waived those arguments as explained at the end of this Court's opinion.

First, the trial court had authority to revoke the suspension of appellant's malicious wounding sentence because the trial court reasonably concluded it had originally suspended appellant's sentence for the maximum period allowable for the convictions in that case. Second, even if this Court were to apply a presumption of vindictiveness, a presumption of vindictiveness is a rebuttable presumption. Appellant conceded the prosecutor was not vindictive, thus he has waived his argument.

## A. Authority to Revoke Suspension

In his third assignment of error, appellant argues the trial court lacked authority to revoke the suspension of his sentence for his malicious wounding conviction. He concedes the trial court had the authority to revoke the suspension of the sentence for his robbery conviction, but he contends that the period of the suspension of his sentence for the malicious wounding

- 6 -

conviction ended more than one year before revocation proceedings began. The trial court concluded that its original orders created a single lifetime suspension period covering both convictions. This Court defers to the trial court's reasonable interpretation of its own order and affirms.

### 1. Standard of Review

Under Code § 19.2-306, "[a] trial court has broad discretion to revoke a suspended sentence and probation." Davis v. Commonwealth, 12 Va. App. 81, 86 (1991). This Court will not reverse the trial court "unless there is a clear showing of abuse of discretion." Keselica v. Commonwealth, 34 Va. App. 31, 35 (2000) (quoting Davis, 12 Va. App. at 86). "However, the '*authority* of the trial court to revoke [an] appellant's suspended sentence is one of statutory interpretation and presents a pure question of law, which this Court reviews *de novo*." Green v. Commonwealth, 69 Va. App. 99, 103 (2018) (alteration in original) (quoting Wilson v. Commonwealth, 67 Va. App. 82, 88-89 (2016)).

### 2. Analysis

Code § 19.2-306 permits a trial court to "revoke the suspension of sentence for any cause the court deems sufficient." Subsection B, however, requires that the trial court proceedings begin within one year of the "probation period" or "period of suspension" specified at the time of the original sentence. Code § 19.2-306(B). If neither period was specified, the default suspension period is the "maximum period for which the defendant might originally have been sentenced to be incarcerated." Id.

The trial court issued two separate sentencing orders when appellant was originally sentenced in 1995 for robbery and malicious wounding. Both orders provided that the suspended portion was suspended "for the maximum period required by law." Appellant argues that because the trial court issued separate sentencing orders and the orders are ambiguous as to how

long the sentence was suspended for, the default suspension provision applies and a proceeding to revoke the suspension could only be initiated within one year after the maximum potential sentence for malicious wounding, which is twenty years. The trial court concluded that when it wrote "maximum period required by law" it meant that the sentences were suspended as long as the law allowed. The Commonwealth argues that this Court should defer to the trial court's interpretation of its own order. This Court agrees.

"[T]rial courts have the authority to interpret their own orders." Fredericksburg Const. Co. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 144 (2000). This Court "defer[s] to the trial court's interpretation of its own order." Leitao v. Commonwealth, 39 Va. App. 435, 438 (2002). "That interpretation, however, must be reasonable, and [this Court] will 'apply an abuse of discretion standard.'" Bajgain v. Bajgain, 64 Va. App. 439, 453 (2015) (quoting Roe v. Commonwealth, 271 Va. 453, 458 (2006)).

Here, the same judge who sentenced appellant originally presided over the revocation hearing. Although he did not specifically recall appellant's original sentencing, he reviewed the record and knew his general practice for issuing orders. In its letter opinion of May 30, 2018, interpreting the original sentencing orders, the trial court noted that both "the robbery and malicious wounding arose out of the same set of facts and circumstances." The charges were tried together. The defendant was sentenced for both charges at the same time and only permitted a single allocution for both charges. The trial court noted the original crimes were particularly egregious. Under these circumstances, the trial court concluded that—although it issued two sentencing orders—it intended to suspend the execution of both sentences for the maximum time permitted by law, which in this case was life. Simmers v. Commonwealth, 11 Va. App. 375, 378 (1990) ("[A] trial court [may] suspend the execution of a sentence without regard to the maximum period for which a defendant might have been sentenced, '*having due*

*regard to the gravity of the offense*.'" (quoting Code § 19.2-303.1)). The trial court's

interpretation of its own order was not an unreasonable interpretation.

Appellant rejects this interpretation, arguing that because the term "maximum period

*required* by law" is meaningless—as there is not a maximum required suspension of a

sentence—the order was ambiguous as to the period of suspension and the default suspension

period applies. The trial court, however, acknowledged that "maximum period *required* by law

was meaningless." The trial court concluded that the only thing it could have meant by that

phrase was the maximum period of suspension that the law allowed, which was life for the

appellant's convictions of robbery and malicious wounding.[2] That conclusion is not

---

[2] Grammatically, the trial court's original act of writing "the maximum period required by law" is understandable. The phrase "maximum period required by law" does not modify the suspension period directly. The phrase modifies the condition of suspension that defendant "keep the peace and be of good behavior." By defining the period of good behavior, the phrase indirectly defines the period of suspension, but because it does so indirectly, it made a more legally correct phrasing sound awkward. The law always allows good behavior, so to write that a defendant must "be on good behavior for the maximum period allowed by law" would sound strange, even if it would be legally precise. This grammatical nuance gives credence to the trial court's interpretation that it meant "maximum period allowed by law" when it wrote "maximum required by law."

unreasonable.[3]  Thus, the trial court correctly concluded it still had the authority to revoke the

suspension of appellant's sentence on the malicious wounding charge.[4]

## B. Vindictive Prosecution

In his second assignment of error, appellant argues that the revocation of the suspension

of his sentences violates the Due Process Clause of the United States Constitution because the

timing of the initiation of the revocation proceedings demonstrates it was a vindictive

prosecution designed to dissuade him from exercising his appeal rights in his murder case and to

increase his punishment for that murder conviction.  He argues that because the prosecutor did

not seek revocation of the suspension of his sentence following his first murder conviction in

2008, when the prosecutor sought revocation immediately following his second conviction, the

prosecutor gave the appearance of vindictiveness.  He also contends that because the revocation

proceeding was initiated before he filed his notice of appeal in the murder case, the revocation

proceeding was calculated to discourage him from exercising that appeal right.  Nevertheless,

---

[3] Even if the trial court erred in interpreting its original sentencing orders, the trial court still had jurisdiction to revoke the suspension of appellant's sentence on the malicious wounding charge.  Code § 19.2-306 grants the trial court authority to revoke the suspension of a sentence "[i]n any *case*."  Thus, even if the default suspension period applied, the "maximum period for which the defendant might originally have been sentenced to be incarcerated" would include the maximum sentence for all the convictions in his "case."  What defines a single "case" from which to aggregate maximum potential sentences may be a difficult question, but resolution of that issue can be largely resolved from the Supreme Court Rules regarding joinder of charges. See Rule 3A:6(b).  Here, appellant's robbery and malicious wounding convictions arose out of a common factual circumstance and were tried in a single trial.  Thus, together they are the "case" which defines the "maximum period for which the defendant might originally have been sentenced."  Because he faced a maximum of a life sentence for the robbery conviction, even if the trial court's conclusion that it had originally suspended his sentences for life were wrong, the default suspension for both charges in the case would have been for appellant's life.

[4] Although this Court affirms based on the trial court's reasonable interpretation of its own orders, this Court notes that trial courts possess the ability to avoid these issues altogether. If the suspension of the sentence for two convictions were contained in a single order, instead of two, there would be little question that the trial court intended a single period of suspension unless the language was explicit to the contrary.

appellant conceded the prosecutor was not actually vindictive. Because any presumption of vindictiveness, assuming without deciding one applies, is rebuttable, his concession waives the argument.

### 1. Standard of Review

"We review a trial court's factual findings on prosecutorial vindictiveness for plain error, but we review its legal analysis *de novo*." Barrett (Clark) v. Commonwealth, 41 Va. App. 377, 392 (2003), aff'd, 268 Va. 170 (2004).

### 2. Analysis

"It is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney." Kauffmann v. Commonwealth, 8 Va. App. 400, 410 (1989). "Indeed, 'the institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion." Barrett (Clark), 41 Va. App. at 391 (quoting Bradshaw v. Commonwealth, 228 Va. 484, 492 (1984)).

Nevertheless, "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). "It is now well established that the 'imposition of a penalty upon the defendant for having successfully pursued a statutory right . . . or collateral remedy would be . . . a violation of due process of law.'" Battle v. Commonwealth, 12 Va. App. 624, 628-29 (1991) (quoting North Carolina v. Pearce, 395 U.S. 711, 724 (1969)). Thus, if a defendant can demonstrate a charging decision was vindictive, that is "that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do," due process forbids conviction on the vindictively motivated charges. Id. at 629.

At trial, appellant conceded that the prosecutor's motive was not vindictive.  Instead, he argues that this Court should apply a presumption of vindictiveness like the United States Supreme Court applied in Blackledge v. Perry and North Carolina v. Pearce.  Appellant's concession is fatal to his argument.

In United States v. Goodwin, 457 U.S. 368, 376 n.8 (1982) (quoting Blackledge, 417 U.S. at 29 n.7), the Supreme Court noted that the government could overcome a presumption of vindictiveness "by objective evidence justifying the prosecutor's action" such as showing "'it was impossible to proceed on the more serious charge at the outset.'"  Moreover, in Barrett (Clark), the trial court refused to dismiss new charges brought after a successful appeal.  This Court assumed, without deciding, a presumption of vindictiveness applied but nevertheless affirmed the trial court's decision that the prosecutor has provided sufficient justification to overcome any presumption of vindictiveness.  41 Va. App. at 398.  Thus, by conceding that the prosecutor was not actually vindictive—"I absolutely believe . . . that was not her intent"— appellant waived any argument about prosecutorial vindictiveness.  Even assuming that a presumption would apply in a circumstance like appellant's, appellant's concession rebuts the presumption.  Therefore, this Court will affirm.

## III.  PROCEDURAL DEFAULT

In his remaining assignments of error, apppellant argues Judge O'Hara erred when he refused to recuse himself from considering the revocation of the suspension of appellant's sentences because the evidentiary basis for revocation would be the same as much of the evidence presented in appellant's murder trial, over which Judge O'Hara presided.  Appellant claims that Judge O'Hara's familiarity with the evidence to be heard establishes that his impartiality could reasonably be questioned, thus necessitating recusal.  Appellant also argues that the evidence presented at the revocation hearing did not justify imposing the entirety of

appellant's suspended sentences and doing so was "completely unjust." This Court will not consider either argument because appellant does not support his argument with authorities.

## A.  Recusal of Judge O'Hara

In his first assignment of error, appellant argues that Judge O'Hara should have recused himself from considering the revocation of the suspension of appellant's sentence because Judge O'Hara presided over appellant's murder trial. During the murder trial, the Commonwealth presented much of the same evidence that it presented at appellant's revocation hearing. Appellant argues that because Judge O'Hara heard the evidence and ruled on admissibility questions during the murder trial, his impartiality could reasonably be questioned. He cites Canon 3 E(1) of the Canons of Judicial Conduct for the Commonwealth of Virginia to suggest that Judge O'Hara should have recused himself because his impartiality could reasonably be questioned.

The Supreme Court has repeatedly held that a trial judge is not required to automatically recuse himself merely because he "is familiar with a party and his legal difficulties through prior judicial hearings." Deahl v. Winchester Dep't of Soc. Servs., 224 Va. 664, 672-73 (1983) (quoting Barry v. Sigler, 373 F.2d 835, 836 (8th Cir. 1967)); see also Prieto v. Commonwealth, 283 Va. 149, 163-64 (2012) (holding a trial judge did not need to recuse himself from the defendant's second capital murder trial, even though the judge had used emotional language when delivering the death sentence in the first trial before that conviction was reversed on appeal). Neither "the previous imposition of the death penalty against a given defendant" nor "the formation or expression of an opinion as to the guilt of the accused based on information acquired during judicial proceedings," were grounds for automatic recusal of the trial judge. Prieto, 283 Va. at 164-65 (citing Justus v. Commonwealth, 222 Va. 667, 673 (1981), and Slayton v. Commonwealth, 185 Va. 371, 376 (1946)).

This Court will not consider appellant's argument because he waived it under Rule 5A:20. "Rule 5A:20(e) requires that appellant's argument 'includ[e] principles of law and authorities.'" Ducharme v. Commonwealth, 70 Va. App. 668, 674 (2019) (alteration in original). "The appellate court is not a depository in which the appellant may dump the burden of argument and research." Fadness v. Fadness, 52 Va. App. 833, 850 (2008).

Here, appellant argues, without supporting legal authority, that Judge O'Hara's familiarity with the evidence to be presented allowed his impartiality to "reasonably be questioned." Appellant does not, however, address the controlling precedent that normally permits a judge to preside over a case despite having knowledge from other judicial proceedings of the defendant and his legal problems. Indeed, appellant cites no authority other than Canon 3 E(1). Appellant's "failure to provide legal argument and authority as required by Rule 5A:20 leaves [this Court] without a legal prism through which to view his alleged error." Bartley v. Commonwealth, 67 Va. App. 740, 746 (2017). Therefore, his argument is waived under Rule 5A:20 and this Court will not consider it.

## B. Length of Imposed Sentence

In his fourth assignment of error, appellant argues that the trial court abused its discretion by imposing the full twenty-eight years' imprisonment remaining on appellant's suspended sentences. Although he concedes he was in violation of the terms of his suspended sentences, he argues that it was a "complete injustice" to impose the entire suspended sentences. As with his first assignment of error, however, appellant cites no authority to support his argument. He has thus waived this assignment of error under Rule 5A:20.

## IV. CONCLUSION

Appellant failed to present authorities in support of his first and fourth assignments of error. He has therefore waived them, and this Court will not consider them. Appellant conceded

the prosecutor was not motivated by actual vindictiveness. Any presumption of vindictiveness is a rebuttable presumption, and therefore, appellant's concession waived any claim for prosecutorial vindictiveness. Therefore, the Court rejects his second assignment of error. Finally, the trial court reasonably interpreted its own sentencing order to suspend appellant's sentence for his entire life. Therefore, the trial court had authority to revoke the suspension of appellant's sentence for the malicious wounding conviction. Therefore, this Court affirms.

Affirmed.